TITLE GUARANTEE AND TRUST COMPANY, Appellant, *v.*
    FANNY ARNOT HAVEN, Individually, and FANNY ARNOT
    HAVEN et al., as Executors of MATTHIAS H. ARNOT,
    Deceased, Respondents.    (Action No. 2.)

Subrogation — where the owner of real property sends a check
to an agent for payment of assessments and an employee of the
agent embezzles the proceeds and presents a forged check in
payment, the bank paying such forged check may have the
assessment reinstated and be subrogated to the lien thereof.

1. Particular words, and least of all the specific word "trust,"
are not necessary to create a trust, but to accomplish that result
there must be either an explicit declaration of trust or circum-
stances which show beyond reasonable doubt that a trust was
intended to be created.

2. Amongst the four essential elements of a valid trust of personal
property are a designated beneficiary and actual delivery of the
fund or property or legal assignment thereof to the trustee with the
intention of passing legal title thereof to the trustee.

3. The owner of certain real property sent her agent a check for
the payment of local assessments which had been laid thereon.
The proceeds of the check were deposited by the agent to his per-
sonal account, and he drew his own check for the amount and gave
it to an employee, directing him to pay the assessments.    The
latter embezzled the proceeds of the check and the assessments
remained unpaid.    Thereafter both the agent and the property
owner died, the latter believing the assessments paid and leaving a
will devising the property affected thereby to her sister and brother.
The embezzler, apprehending discovery of his crime, thereupon
forged a check, purporting to be drawn by and in the name of the
estate of the agent, his employer, to the order of the collector of
assessments, and delivered it to him in payment of the assessments.
Subsequently the forged check was presented to and paid by the
plaintiff and charged to the account of the purported drawer, but
upon discovery of the forgery the amount so charged was restored.
Neither the respondents nor their testator knew of the making and
presentation of the forged check nor of the use which was made
of it, nor was it delivered to the collector of assessments by or in
pursuance of any direction by them or any of them.    In an action
by the bank upon which the forged check was drawn and by whom
it was paid to have reinstated and to be subrogated to the lien of the

assessments on the property or the proceeds thereof, *held*, that no trust was created by the sender of the check either for her own benefit, for the benefit of her proposed devisees or for the benefit of the city where the property was situated, but that there arose an ordinary relation and condition of principal and agent which was automatically revoked by the death of the sender; that thereafter the estate of the agent not only had no duty to pay the assessments but had no right to do so; that the forger was responsible to his employer and principal and not otherwise, and that there was no obligation on the part of the agent or his estate or the forger to pay the assessments at the time the plaintiff cashed the forged check, and, therefore, the payment by the bank of the forged check was gratuitous and it was not prevented by section 112 of the Negotiable Instruments Law from obtaining subrogation.   (Cons. Laws, ch. 38.)

4. On examination of the equitable considerations presented it appears that no injury or injustice can arise to defendants by having the lien reinstated and plaintiff subrogated thereto, no rights having accrued or been changed as the result of the payment by the plaintiff which would be impaired thereby, but that defendants would simply be restored to their original position and be precluded from enjoying benefits secured through the unintentional and gratuitous act of plaintiff, and, therefore, the plaintiff should have judgment for the relief demanded.   (*Title Guarantee & Trust Co.* v. *Haven*, 196 N. Y. 487, explained.)

*Title Guarantee & Trust Co.* v. *Haven*, 154 App. Div. 652, reversed.

(Argued February 2, 1915; decided April 13, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 8, 1913, affirming a judgment in favor of defendants entered upon the report of a referee dismissing the complaint on the merits.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harold Swain* for appellant.   There was neither a real obligation nor a supposed obligation on the part of the estate of Andrew H. Green, or of the forger, nor a discharge of any obligation, real or supposed.   (*Matter of Hun*, 144 N. Y. 472; *Seitz* v. *Seitz*, 59 App. Div. 150; *Mills* v. *Mills*, 115 N. Y. 80; *Wood* v. *Young*, 141 N. Y.

211; *Lammer* v. *Stoddard*, 103 N. Y. 672; *Staten Island Club* v. *F. L. & T. Co.*, 41 App. Div. 321; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Kelly* v. *Roberts*, 40 N. Y. 432; *Manhattan Co.* v. *Blake*, 148 U. S. 412; *Brown* v. *Spohr*, 180 N. Y. 201.)  The money sent by Mrs. Ogden to Mr. Green did not become impressed with a trust in favor of her devisees, nor is it to be treated as equitably converted into land.  (*Garnsey* v. *Rodgers*, 47 N. Y. 233; *Beveridge* v. *N. Y. El. R. R. Co.*, 112 N. Y. 26; *Embler* v. *Boiler Co.*, 158 N. Y. 431; *Lorillard* v. *Clyde*, 122 N. Y. 498; *Haefelin* v. *McDonald*, 96 App. Div. 213; *Staten Island C. & B. Club* v. *F. L. & T. Co.*, 41 App. Div. 321; *Montignani* v. *Blade*, 145 N. Y. 111; *Wadd* v. *Hazleton*, 137 N. Y. 215; *Beaver* v. *Beaver*, 117 N. Y. 421; *Brown* v. *Spohr*, 180 N. Y. 201.)  It is an untenable contention that when Mrs. Ogden sent her money to Mr. Green with instructions to pay the assessments, she intended to create a trust for the devisees named in her will.  (*Kelly* v. *Roberts*, 40 N. Y. 432; *Bigelow* v. *Davis*, 16 Barb. 561; *Barlow* v. *Burrow*, 16 M. & W. 126; *Williams* v. *Everett*, 14 East, 582; *Seaman* v. *Whitney*, 24 Wend. 260; *Hill* v. *Lauderdale*, 46 N. Y. 70; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Dale* v. *Hepburn*, 11 Misc. Rep. 286; *Hoover* v. *Greenbaum*, 61 N. Y. 305; *Hoover* v. *Wise*, 91 U. S. 808; *Montgomery Co. Bank* v. *Albany City Bank*, 7 N. Y. 459.)

*John Vernou Bouvier, Jr., William Montague Geer, Jr.,* and *Edward De Witt* for respondents.  The payment of the assessments by means of the forged check is now shown to have been not gratuitous, and consequently, upon the express holding of this court, no recovery can be had.  (*Title G. & T. Co.* v. *Haven*, 196 N. Y. 487; *Nassau Bank* v. *Nat. Bank*, 159 N. Y. 456.)  The money transmitted to Green, with the direction that he apply it in discharge of the assessments upon the land, upon Mrs.

Ogden's death became equitably converted into the land, and the obligation of Green to so apply or refund the money equitably belonged to the devisees, the defendants, and was discharged when the assessments were paid by means of the forged check. (*Williams* v. *Haddock*, 145 N. Y. 144; *Palmer* v. *Morrison*, 104 N. Y. 132; *Thomson* v. *Smith*, 63 N. Y. 301; *Rockland Lime Co.* v. *Leary*, 203 N. Y. 469; *Buckley* v. *Doig*, 188 N. Y. 238; 1 Pom. Eq. Juris. § 161; *Jagger* v. *Bird*, 42 Hun, 423; *H. S. M. Co.* v. *Vaughan*, 49 Hun, 605; *De Barante* v. *Gott*, 6 Barb. 492; *Coster* v. *Clarke*, 3 Edw. Ch. 428; *Hamilton* v. *Miller*, 31 Ohio St. 87.) The money received by Green became impressed with a trust, either before, or at the moment of Mrs. Ogden's death; when the trust was carried out a discharge of Green's obligation resulted. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Hoffman House* v. *Foote*, 172 N. Y. 348; *Hirsh* v. *Auer*, 146 N. Y. 13; *McKee* v. *Lamon*, 159 U. S. 317; *Burns* v. *N. L. & O. Power Co.*, 145 App. Div. 280; *Matter of Carpenter*, 131 N. Y. 86; *De Witt* v. *Monjo*, 46 App. Div. 533; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209; *London Assurance Corpn.* v. *Thompson*, 170 N. Y. 94.) Section 112 of the Negotiable Instruments Law operates to prevent a recovery. (*Nat. Park Bank* v. *Ninth Nat. Bank*, 46 N. Y. 77.) Justice and equitable considerations forbid the application and enforcement of the principle of subrogation. (*Strickland* v. *Magoun*, 119 App. Div. 113; *Nassau Bank* v. *Nat. Bank*, 159 N. Y. 456; *Mayer* v. *Mayor, etc.*, 63 N. Y. 455.)

HISCOCK, J. This action was brought seeking to have reinstated the lien of certain local assessments on property or the proceeds thereof formerly owned by the defendant Havens and the testator Arnot situated in the city of New York, and to be subrogated to the lien of said assessments. This relief is asked because the appellant was induced to honor a forged check drawn on it in the name of a depositor and presented by or in behalf

of the city which had received it in payment of said assessments.

The case has been before this court once before on an appeal from the affirmance of a judgment dismissing the complaint (196 N. Y. 487). On that appeal it appeared that such dismissal had been granted because of the supposed application of the provisions of section 112 of the Negotiable Instruments Law (Cons. Laws, ch. 38), which enacts that the acceptor of a negotiable instrument admits "the existence of a drawer, the genuineness of his signature, and his capacity and authority to draw the instrument." It had been believed by the trial court and Appellate Division that the appellant as drawee of the check was bound to know the signatures of its depositors, and that when it honored the forged check it was bound by its act and could not recover back the moneys paid thereon to the city and applied by the latter in discharge of the assessments, and, therefore, it could not be subrogated to any rights which the city might have had if the check had not been honored, against the third persons whose assessments were paid by its proceeds.

This court in reversing that judgment held that the rule enacted by the statute in respect of the obligations of the drawee of a check had no application in behalf of one who had acquired paper in the absence of any consideration therefor, and that so far as appeared the forged check in this case was not given in payment of any indebtedness past or existing, due either from the purported maker or from the forger of the check, but amounted to or represented a purely gratuitous payment.

The issue thus outlined by our decision is the only one left for debate, and on this appeal it is insisted by the respondents that additional facts have been developed which establish that the forged check was given for a consideration, and that, therefore, the rule which was erroneously applied on the first trial has now been properly applied both within the words written by this court

on the former appeal concerning this specific case and within principles established by other authorities.

In order to determine whether this contention is well founded, and whether respondents have so avoided the force of our former decision that they can uphold the present judgment, it will be necessary to summarize the important facts established on each trial and thus by comparison bring into prominence the additional ones which were proven on the last one.

On the first trial it appeared that one Marianna A. Ogden was the owner of the premises in question and had made a will devising them to her sister and brother, Mrs. Haven and Mr. Arnot. Shortly after the assessments in question had been laid, first one Andrew H. Green and then Mrs. Ogden died, and the premises passed, in accordance with the terms of her will already outlined, to the devisees therein named. Subsequently the forged check, purporting to be drawn by and in the name of the estate of said Green to the order of the collector of assessments of the city of New York, was delivered to the latter in payment of said assessments, and subsequently in behalf of the city presented to and paid by the plaintiff and charged by the latter to the account of the purported drawer, the amount so charged being afterwards restored.

On the present trial the additional facts of supposed importance which have been found are the ones that Mr. Green, who was her agent and attorney, notified Mrs. Ogden that the assessments on said premises had been laid and asked her to send him a check for the purpose of paying the same; that she did send to him a cashier's check payable to his order which was received by him and the proceeds deposited to his personal account and his own check given to a dishonest employee, Andrews, for the purpose of paying said assessments; that the latter embezzled the proceeds of the check and the assessments remained unpaid; that after the death of Mr. Green and Mrs. Ogden, Andrews, apprehending discovery of his crime,

drew upon plaintiff the forged check and sent it in payment of said assessments; that Mrs. Ogden died believing that the assessments had been paid, but that the defendants and their testator knew nothing of the making and presentation of the forged check or of the use which was made of it and it was not delivered to the collector of assessments by or in pursuance of any directions by them or any of them.

It is earnestly argued that the opinion on the former appeal of itself gives to these additional facts an effect in establishing a consideration for the forged check in the possession of the city which is destructive of appellant's right to recover, and in support of that contention our attention is especially called to certain passages in the opinion. It is recalled that Judge BARTLETT pointed out that the facts had been found by the referee substantially as pleaded by the defendants, "except that there is no finding of the receipt of any money by Andrew H. Green from Marianna A. Ogden with which to pay the assessments;" that "Upon the facts as found by the referee we have here the case of a purely gratuitous payment of assessments, constituting at the time a lien in favor of the city of New York upon lands owned by the defendants, which payment was clearly induced by the fraud and forgery of some party unknown," and that, therefore, the provisions of section 112 of the Negotiable Instruments Law did not prevent subrogation; and, further, "It must be distinctly understood that this view is predicated upon the assumption that the payment of the assessments was purely gratuitous and in no wise in discharge of any real or supposed obligation upon the part of the estate of Andrew H. Green or of the unknown forger, but was brought about solely by mistake induced by the forgery. Upon this assumption we think that the plaintiff on proof of the facts stated in the complaint would be entitled to be subrogated to the lien of the city as against the proceeds of the sale of the land in the hands of the

defendants. If, however, it should be made to appear that the payment was not thus gratuitous, we are of opinion that the right of subrogation could not successfully be asserted."

These passages have thus been repeated at length because they are thus quoted in the opinion of the learned referee and upon them, as stated, the argument is made both by him and the respondents' counsel that the court must be regarded as having meant to say in advance that if it should appear that Mrs. Ogden had sent to Mr. Green the money with which to pay these assessments, as it now appears she did do, there would have been established a "real or supposed obligation" on the part of the Green estate or the forger to pay them, the payment by the bank of the forged check would not have been a gratuitous one and subrogation would not lie and that, therefore, judgment has been correctly ordered for the respondents.

It seems to me that what was said in the opinion does not reasonably bear any such interpretation, and that the conclusion is not warranted that the court in advance of a trial undertook to forecast the precise evidence which might be given and bind itself to a construction of that evidence as settling the rights of the parties.

It was being decided that as the facts then stood the payment by the appellant was a purely gratuitous one induced by fraud and a new trial was being ordered. In doing this and in summarizing the findings on which the decision was being reached, and certainly as tending to support it, reference was made to the circumstance that the respondents had not even proved the allegation of their answer that Mrs. Ogden had ever sent any money to Mr. Green to pay the assessments, and without such evidence we must all concede that they could scarcely make a start on their defense; and attention was also particularly called to the circumstance that the moneys had been paid by the appellant "without any request

or authority from the defendants." But of course it was appreciated that on another trial there would be opportunity to amplify the evidence on both sides. This opportunity would not be bounded even by the pleadings as they then stood but they might be amended, and nobody could prophesy but that it might appear not only that the money was advanced by Mrs. Ogden to Mr. Green to pay the assessments but that this was done by and with the knowledge of, or under some arrangement with, the city or proposed devisees which would create such an obligation on the part of the Green estate to pay the assessments at the time the forged check was honored as would subject appellant to the provisions of the Negotiable Instruments Law already referred to. The court could not foresee all of the new directions which additional evidence might take.

Therefore, with an abundance of caution and to avoid any opportunity for disappointment if on another appeal we should hold the appellant not entitled to recover, it was written that if through any such modification of the testimony on a new trial it should be made to appear that the plaintiff's payment was not a mere gratuity, but that there was an obligation on the part of Mr. Green's estate or the forger to pay the assessments, the gratuitous feature would be eliminated and there would be failure of a cause of action. It would seem to me that all the opinion fairly did was to prescribe the principles which might be invoked in governing the action of the courts on another trial and that this court did not at all attempt or intend to bind itself in advance by announcing what the effect of specific facts would be in satisfying those principles.

If I am right in this view we are brought to a free consideration on the merits of the question whether there was any such obligation on the part of Mr. Green or his estate or the forger to pay these assessments at the time appellant cashed the forged check that section 112 of the Negotiable Instruments Law prevents relief.

I assume that under the facts of this case the words in the opinion of Judge BARTLETT enumerating a "supposed" obligation cannot add materially to the other language which was employed. On the facts which appear there either was or was not a clear obligation on the part of Mr. Green's estate to pay these assessments, and if there was an utter lack of such obligation a basis for the invocation of the protection of the section of the Negotiable Instruments Law which has been referred to would not be secured through the visionary and unfounded belief on the part of the forger Andrews that a liability upon the part of Mr. Green's estate to pay said assessments did exist. Further there seems to be no doubt that if there was any liability to pay the assessments it rested upon the estate of Mr. Green. While of course the forger was responsible for his crime in misappropriating the check it was to his employer and principal and not otherwise. (*Montgomery Co. Bank* v. *Albany City Bank,* 7 N. Y. 459; *Hall* v. *Lauderdale,* 46 N. Y. 70.)

I think it may be fairly stated that it is conceded that this question whether the estate of Mr. Green was under any obligation to pay the assessments at the time the forged check was uttered and honored by appellant, is dependent on the decision of an underlying inquiry whether the transaction between Mrs. Ogden and him whereby the former sent to the latter her check for the purpose of paying the assessments created an ordinary relation and condition of principal and agent or whether it resulted in imposing on Mr. Green a trust obligation in favor of the respondents or the city to pay the assessments. If the former, not only did Mrs. Ogden have the right during life to revoke her intended payment, but her death, under familiar principles, automatically revoked the agency of Mr. Green to make it and thereafter his estate not only had no duty to pay the assessments, it had no right to do so. Its liability would be to

account to the estate of Mrs. Ogden for the moneys · which had been recovered and not expended as directed. On the other hand, if Mrs. Ogden placed these moneys in the hands of Mr. Green as a trust fund, to be applied to the payment of the assessments, it is assumed on all sides that the obligation thus to apply them survived his death and rested as an obligation on his estate at the time when the check forged in its name was sent out by Andrews to accomplish that purpose.

It is not overlooked that the attempt has been made to build up some special bases on which the present judgment may rest and these will first be considered and cleared away.

It is argued briefly, and I should judge not very confidently, that the transaction between Mrs. Ogden and Mr. Green resulted in an obligation on the part of the latter which could be enforced by the city or devisees under the doctrine of *Lawrence* v. *Fox,* but it seems too plain for serious debate that there were entirely lacking features which were necessary to set in motion the doctrine of that case as it has survived much consideration and limitation. (*Garnsey* v. *Rogers,* 47 N. Y. 233, 240; *Vrooman* v. *Turner,* 69 N. Y. 280; *Beveridge* v. *N. Y. Elev. R. R. Co.,* 112 N. Y. 1, 26; *Lorillard* v. *Clyde,* 122 N. Y. 498, 502.)

It is also said that the money transmitted to Mr. Green " should be regarded as converted into the land and to be impressed with a trust for whosoever owned the land;" also that " there was a setting apart out of the general assets of Mrs. Ogden of a specific fund for the purpose which was declared," and that, therefore, a trust arose in favor of the respondents under the principles, as I understand it, which have been applied to a deposit by one person of his own money in his own name as trustee for another as settled by such cases as that of *Matter of Totten* (179 N. Y. 112, 122). These propositions, as it seems, but present certain special phases of the argument that by the moneys transmitted to Mr. Green some form

of a trust obligation was created, and ultimately they must be submitted to that test and, therefore, they will be answered by a discussion of that general question.

In the settlement of the question whether this was a case of ordinary agency or the creation of a trust the primary facts which engage our attention are that Mr. Green, who evidently was the agent and attorney of Mrs. Ogden, informed her that the assessments on this property for local improvements had been fixed at a certain amount and asking her to send her check for the amount; that she did so and that this check was deposited by Mr. Green to the credit of his account; that subsequently in a moment of apparent forgetfulness he wrote her again that the amount of assessments had been reduced to the figure originally named by him, and "this must now be paid," and asking her to send her check at once to avoid the accumulation of interest; that apparently she wrote him that she had sent a check and he acknowledged that she had; that subsequently he drew his check for the payment of the assessments and gave it to his clerk who embezzled the proceeds.

It appears to be almost beyond the possibility of debate that the facts thus far stated made out a most simple case of agency such as is repeatedly occurring every day in the most ordinary business transaction. A principal has sent to her agent upon his request certain moneys to be used in paying assessments on her own lands.

But our attention is called to other facts which it is said changed the character of the transaction and imposed upon it a different one than ordinarily arises when a principal gives to his employee a check for the purpose of paying a bill, and we are referred to the ones already outlined that Mrs. Ogden had made a will devising the property covered by the assessments to the defendant Mrs. Haven and the testator Mr. Arnot; that she undoubtedly died in the belief that the assessments had been paid; that if they are not paid her expectations will have been disappointed

and therefore a trust of some kind ought to be raised for the purpose of carrying out her wishes.

In my opinion these facts are accidental and irrelevant to the disposition of the question; they evidence what it is supposed Mrs. Ogden believed would be the result of her transaction with Mr. Green, if she thought about it, rather than determine what the character of that transaction really was. If a trust was created by or in connection with the transmission of this money to Mr. Green that result must have been effected at the time, and the character of the transaction as it then occurred is not to be changed or distorted because it is supposed that the remote intentions and expectations of one of the parties will be better subserved by later attributing to it one character rather than another. The quality of the act of a principal who in the ordinary course of business gives an agent money with which to pay assessments on his own lands subsequently ought not to be transformed because the principal dies and through the default of the agent the lands pass to devisees burdened with an assessment which the principal expected to pay while alive for his own benefit and protection.

It may be difficult at times to determine whether certain acts bring into existence merely the relationship of principal and agent or give rise to a trust obligation upon the part of one of the parties to third persons. The relationship of agency imposed upon Mr. Green a trust relationship with Mrs. Ogden under which it may be assumed that his estate is accountable, and in determining whether any other trust obligation was imposed upon him as contended by respondents we must largely depend on the test of general principles.

In the first place when we examine the occurrence between Mrs. Ogden and Mr. Green we search in vain for something which shall reasonably satisfy us that the former could have had any intention to give an extraordinary nature to a very ordinary event, and create a

trust for the purpose of paying taxes. The act intrusted to Mr. Green was a common one which it was expected would be performed immediately, and it is a strain on our judgment to believe that Mrs. Ogden, even in her undisclosed intentions, contemplated the rights of any third parties to have these moneys applied to the payment of assessments on lands of which she was the sole owner. Of course particular words, and least of all the specific word "trust," are not necessary to create a trust, but to accomplish that result "there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." (*Beaver* v. *Beaver*, 117 N. Y. 421, 428.)

And this difficulty in believing that Mrs. Ogden had any such formidable purpose is accentuated when we attempt to determine in the second place who was the beneficiary of the trust if one was created. For amongst the four essential elements of a valid trust of personal property are a designated beneficiary and actual delivery of the fund or property or legal assignment thereof to the trustee with the intention of passing legal title thereof to the trustee. (*Brown* v. *Spohr*, 180 N. Y. 201, 209.)

As a guide in this quest for a beneficiary we may avail ourselves of the help which the learned counsel for the respondents has attempted to give us. He says that "An ascertainable beneficiary of the trust existed in the case at bar. * * * Upon the authority of these and kindred cases (cited in the brief), perhaps the City of New York, and surely the devisees, could have enforced the promise made for their benefit by Green. * * * Moreover, Mrs. Ogden herself might be considered as a beneficiary entitled to compel the application of the money to her benefit in the manner directed. A power of revocation does not affect the validity of a trust."

It does not seem necessary to argue that this was not a trust created by Mrs. Ogden for her own benefit. Neither,

in my judgment, can it be reasonably held that a trust was created for the benefit of her proposed devisees. As has been said, at the time the trust was created, if at all, Mrs. Ogden was the owner of the lands and the assessments were due and payable. If they were not paid penalties would accrue and eventually the lands themselves be lost. Only death and an unrevoked will at some indeterminate date in the future would give the devisees any interest in the subject, and there is not the slightest indication that Mrs. Ogden contemplated death, and it cannot be that at the time she sent her check to Mr. Green she really thought about this remote situation and intended to create a trust fund for the benefit of those who might not, if at all, have any interest in, or right to enforce, its application until long after the occasion and opportunity for such application had passed and been lost by sale of the lands.

The funds at the time the assessments were finally paid were not in the hands of the agent to be followed and impressed with a trust if that were otherwise possible. Neither had they been by him in bad faith expended for some unauthorized purpose or invested in some other form of property. If the estate of Mr. Green is liable it is because of legal responsibility for a default caused by the acts of his criminal agent, and not because of responsibility in equity for his bad faith in dealing with his principal. To repeat somewhat, if there is a trust in favor of Mrs. Ogden's beneficiaries, it must be because it is necessary to give this character to a simple transaction of agency, which did not contemplate or consider them at all, in order to secure to them in their subsequently accruing character of devisees certain benefits which would have fallen to them if the agency had been properly performed, and to relieve them from the disappointment which otherwise will result from the miscarriage of the agency. Mere misplaced supposition of a testatrix that an agent has performed his duty, or sincere

disappointment by a devisee because he has not done it, is not a sufficient basis on which to rest an implied or resulting trust.

Therefore, the only beneficiary of this supposed trust who at the time of its creation was in existence, and could possibly have been contemplated by Mrs. Ogden if she intended to create a trust, was the city of New York, to which was due the payment of the assessments, and the question must become whether a trust was created for its benefit. If a trust was created, then, however voluntary and without consideration its creation may have been, it could not be revoked in the absence of express reservation of the power to do so without the consent of the beneficiary, and the beneficiary could at once compel execution of the trust for its benefit. (Perry on Trusts [6th ed.], § 104; *Gaylord* v. *City of Lafayette*, 115 Ind. 423, 429; *In re Estate of Podhajsky*, 137 Ia. 742; *Lovett* v. *Farnham*, 169 Mass. 1.)

Applying these principles to the situation which would be created by a trust, the practical and decisive inquiry at once arises whether it can be believed that if after Mrs. Ogden had forwarded these moneys to Mr. Green she had changed her mind and concluded to resist rather than voluntarily pay the assessments she would have been without power to revoke her orders and the city of New York could have enforced payment of the liens on the ground that a trust had been created in its favor. In the light of ordinary experience and of common judgment this question answers itself and that it would be extravagant to say that she could not change her mind, revoke her orders and that Mr. Green could be compelled by action in behalf of the city of New York to pay to it the moneys which had been transmitted to him.

It is naturally difficult to find express authority holding that facts which seem to present the features and characteristics of an ordinary agency do not make a

trust for the benefit of some third person. I think, however, that the authorities which seem to be especially relied on by the respondent as establishing a trust in this case indirectly serve this purpose, for each one shows the presence of facts decisively making for the existence of a trust which are absent in this case.

Thus, in *Associate Alumni* v. *General Theological Seminary* (26 App. Div. 144) it appeared that an association had collected a large sum of money for the purpose of establishing a professorship in a seminary and had paid it to the seminary on certain express and written conditions; that by express resolution the latter had approved of this work and had accepted the money upon the condition imposed and which for several years had been recognized and complied with in the use of the income, and it was held that a valid trust was created upon conditions which the seminary had assented to and which it was estopped from questioning.

In *Todd* v. *Vaughan* (90 Hun, 70) the testator two or three days before his death delivered to the defendant a certain sum of money with the request that it should be used for certain purposes subsequent to his death. The defendant received the money and explicitly promised to appropriate the sum as directed by the testator. It was argued that this transaction which expressly contemplated action after the testator's death was revoked by that event, but it was held that a trust had been created which clearly contemplated execution after the death of the benefactor and which, therefore, survived such death.

In *Matter of Carpenter* (131 N. Y. 86) it was held that a trust arose out of a transaction whereby one person transferred to another certain notes upon the express agreement that the transferee was to collect the notes and pay and give the proceeds to a certain beneficiary, and this result was based on the view that by the facts appearing more than an agency had been created; that the transferror had entirely divested himself of the title

to the notes and after the delivery thereof under the arrangement in question could not reclaim them or be reinstated to his original title.

In *Hirsh* v. *Auer* (146 N. Y. 13) it appeared that a policy or certificate of insurance had been taken out and made payable to the defendant upon the express agreement with the insured that when she collected the policy upon his death she would expend a certain sum for his funeral expenses and divide the balance equally between the plaintiffs, and it was held that this created a trust in favor of the latter. I do not see well how it could have been otherwise.

Perhaps the case in which an attempt has been made to transform an agency into a trust which comes most nearly to the present one is that of *Staten Island Cricket & Baseball Club* v. *Farmers' Loan & Trust Co.* (41 App. Div. 321). It there appeared that the plaintiff corporation had issued a series of bonds secured by a mortgage to defendant as a trustee and that the mortgagor had been accustomed as the interest became due to transmit to and deposit with said trustee moneys for the express purpose of meeting the coupons on said bonds as they became due. It was urged that thereby a trust was created in favor of outstanding bondholders and that after they had been once deposited the moneys could not be withdrawn. It was, however, held otherwise and determined that no trust was created but that the bank simply held the moneys as disbursing agent for the mortgagor.

What was said in another case, not, it is true, involving facts entirely similar to those here presented, is also pertinent to the consideration of the general question whether a trust was created.

In *Kelly* v. *Roberts* (40 N. Y. 432, 439) an arrangement had been made on the sale of a stock of goods that the vendee could pay the purchase money to third parties in satisfaction of debts owing the latter by the vendor, and it was held that such an arrangement in the absence of

any notice to or acceptance or assent by such third parties was not irrevocable by the vendor and did not create a trust for the third persons. In announcing this conclusion it was said: "It would be a very liberal extension of these cases (referring to authorities) if it should be held that, if A hand money to his own servant or agent, with instructions to carry and deliver it to B, which the servant or agent agrees to do, such instructions are irrevocable, and, although A should change his mind before his agent or servant sets out on his errand, he could not countermand the instructions and take back his money. * * * So, where one hands money to his servant, agent or friend, with a request that he * * * pay a note due or about to become due, can it be seriously questioned that, if before anything further is done, such one concludes to use the money for some other purpose. * * * he may do so? I think not. * * * Although where a trust has been created for the benefit of a third person assented to by him, it has been held to create an implied contract in equity or at law, according to the circumstances, and to be irrevocable, the mere agreement of third persons, without consideration, not acted upon by either, nor communicated to him in whose apparent favor it is made, is as much the subject of revocation or release as if the latter was not named therein. The present case * * * is not one of trust or delivery of money or property to one to be paid or delivered to another." (See, also, as sustaining the view that the transaction between Mrs. Ogden and Mr. Green created a mere agency, *Bigelow* v. *Davis*, 16 Barb. 561; *Barlow* v. *Burrow*, 16 M. & W. 126; *Seaman* v. *Whitney*, 24 Wend. 260).

As was proper in such a case as this where the plaintiff appeals to the equity side of the court for relief, there has been some discussion of the equitable considerations which are supposed to be presented by appellant's prayer for subrogation and the view has thus far prevailed that if such relief should be granted the result would be

inequitable.   I confess that I am utterly unable to grasp
this view.   The appellant was an utter stranger to Mrs.
Ogden's plan to pay the assessments whether for her
own benefit or for the benefit of the respondents.   It was
charged with no obligation to secure their payment and
it did not have even a sentimental interest in their satis-
faction.   It was not the agent of any of the persons in the
circle of those who were responsible for or interested in
the satisfaction of the liens.   Under these circumstances
by fraud and crime committed by the employee of Mrs.
Ogden's agent it has been induced to advance the
moneys, gratuitously as a matter of fact, for the pay-
ment of the assessments and the respondents thus far
have reaped the benefit of this act.   No possible injury
or injustice can arise to them by having the lien rein-
stated on the proceeds of the real estate and appellant
subrogated to that lien.   No rights have accrued or
been changed as the result of this payment by appellant
which would now be impaired by the remedy of subroga-
tion.   All that could happen would be that respondents
will be restored to their original position and will be pre-
cluded from enjoying any benefits which they have thus far
secured through the unintentional and gratuitous act of
appellant and may possibly be precluded from averting
at appellant's expense the disappointment which they may
suffer because Mrs. Ogden did not pay the assessments
on her own land which subsequently passed to them as
devisees.   These hardly seem to present equitable reasons
for refusing relief to appellant if it is otherwise entitled
thereto.

On the contrary, it appears that a somewhat unusual
result will follow if this relief is denied.   Respondents
will have secured the benefit of the payment of the assess-
ments with the moneys of the appellant, an outsider.
They are the residuary legatees to the extent of a two-
thirds part of Mrs. Ogden's residuary estate, and Mrs.
Havens is, and Mr. Arnot was, executrix and executor

respectively of that estate. It has been claimed, though of course that is not here decided, that Mr. Green's estate is responsible to the estate of Mrs. Ogden for the moneys advanced to him to pay the assessments and not properly applied to that purpose, and a suit is now pending in behalf of such estate to recover such moneys. Therefore, if subrogation is denied to appellant, it seems liable to result that as devisees the respondents and their testator will have had the assessments paid on their lands and that as residuary legatees of Mrs. Ogden they will at the same time be able to retain two-thirds of the money which, rather than that of appellant, ought to have been applied to the payment of assessments.

I think the judgment which has been rendered should be reversed and, inasmuch as two trials have been had and the facts fully developed and found, final judgment should be rendered in favor of the appellant for the relief demanded by it, with costs in all courts.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN and SEABURY, JJ., concur; MILLER, J., not voting.

Judgment accordingly.