**Ryan SADWITH, Plaintiff,**

v.

**Jacob LANTRY, Jennie E. Lantry, Universal Sheet Metal Works, Inc. and Universal Sheet Metal Corporation, Defendants.**

United States District Court
S. D. New York.
July 11, 1963.

. Samuel L. Chess, New York City, for plaintiff.

Levine & Berman, New York City, for defendants.

EDELSTEIN, District Judge.

The plaintiff was a party to an agreement dated May 21, 1926, whereby he sold his one-half interest in the defendant Universal Sheet Metal Works, Inc. to the defendant, Jacob Lantry, the owner of the remaining one-half interest. Sadwith now seeks to have Lantry and the other defendants "account in equity" for certain transactions concerning real property which was, in part, the subject matter of the agreement. Sadwith's contentions, to be more fully explored infra, are that the legal effect of the May 21, 1926, agreement was to create an express trust over the subject property or a joint venture to share in the proceeds of the property and that consequently, Lantry is liable to him either as a *cestui que trust* or as a joint venturer. The transactions for which plaintiff claims Lantry to be liable occurred intermittently between 1926 and 1961. Plaintiff seeks to have the court impress a trust or equitable lien to the extent of his interest in the subject property. Jurisdiction of the action is based on diversity of citizenship, 28 U.S. C. § 1332(a) (1) (1952).

Defendants have moved for judgment on the pleadings pursuant to Rule 12 (c), Fed.R.Civ.P. Since affidavits have been submitted both in support of and in opposition to the motion, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *." Rule 12(c), Fed. R.Civ.P. Plaintiff's cross-motion for summary judgment was denied following oral argument.

██ ██ An examination of the moving papers and the memoranda of the parties demonstrates that the controversy does not concern genuine material factual issues. There is no dispute whatever concerning the validity of the agreement itself and the defendants have not taken issue with any of plaintiff's factual allegations concerning transactions occurring subsequent to the execution of the agreement. Rather, what is at issue is the legal force and effect of the 1926 contract. The question that so sharply divides the parties is the determination of their legal relationship as created by the agreement and the respective rights, duties and liabilities flowing therefrom. Therefore, where, as here, the facts are undisputed, and the issue depends solely upon a legal conclusion to be drawn from a consideration of the parties' relationship, resort to summary judgment is appropriate. See Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir., 1962); United States v. Birngold Realty Co., 211 F.Supp. 934 (S.D.N.Y. 1962), aff'd per curiam sub nom. United States v. Schildhaus, 316 F.2d 240 (2d Cir., 1963). "The procedure for summary judgment was intended to expedite the settlement of litigation where it affirmatively appears upon the record that in the last analysis there is only a question of law as to whether the party should have judgment in accordance with the motion for summary judgment." Elgin J. & E. Ry. Co. v. Burley, 140 F.2d 488, 490 (7th Cir. 1943), aff'd 325 U.S. 711, 719, 65 S.Ct. 1282, 1287–1288, 89 L.Ed. 1886 (1945), adhered to on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); 6 Moore, Federal Practice ¶ 56.-15[1] (2d ed. 1953).

The undisputed material facts are as follows: Prior to 1918 plaintiff and defendant Lantry were doing business as a partnership under the firm name of Universal Sheet Metal Works. On January 4, 1918, they formed the defendant corporation, Universal Sheet Metal Works, Inc., hereafter referred to as "Universal Works," and transferred to it the assets of the partnership. The S. & L. Realty Co., Inc., a jointly owned corporate-nominee of plaintiff Sadwith and defendant Lantry was the record owner of the business site located at 4010, 4014 and 4016 Park Avenue in Bronx County, in the City of New York. In 1926 plaintiff sought to terminate his association with Universal Works and on May 21, 1926,

the written dissolution agreement that is the subject of this motion was entered into by plaintiff, Lantry, Universal Works, and the S. & L. Realty Co., Inc. Pursuant to this agreement the assets of the two corporations were divided and distributed between plaintiff and defendant Lantry. Sadwith sold and transferred his interest in Universal Works to Lantry in return for approximately $38,000 worth of cash and personalty received from Universal Works and Lantry. Lantry thereby became the owner of all of the capital stock of Universal Works.

The agreement further provided that Universal Works was to acquire the Park Avenue property, subject to a mortgage of $22,000 and pursuant to the agreement the premises were conveyed to Universal Works by the S. & L. Realty Co., Inc. Article First 9(b) of the agreement provided that "Upon a bona fide sale of the premises known as Nos. 4010, 4014, 4016 Park Avenue, New York City, by Universal whenever the same may take place, a minimum sum of Five thousand—dollars ($5000.00) shall be paid to Sadwith, or in the alternative, if Sadwith so desires, one-half (½) of the net profits derived after the sale of said premises. * * *" For the purpose of arriving at the net profits it was agreed that Universal Works' cost basis should be $38,000 plus the additional expenses that it might incur in effecting a sale of the property. Apart from this provision, and provision 9(c) dealing with the sale of the property in the event of total destruction by fire [1] the agreement contained no restrictions as to the use, encumbrance or disposition of the property. Nor did the agreement contain any explicit provision requiring Universal Works to give notice to plaintiff of any action it might take with respect to the property.

In March 1927 Universal Works executed a second mortgage as security for a loan of $15,000 and in May 1929, after this second mortgage became due, a first mortgage of $35,000 was executed by Universal Works to the Dollar Savings Bank. In 1934 the Dollar Savings Bank (Bank) foreclosed the mortgage and purchased the property for $36,000 at a foreclosure sale. The judgment of foreclosure entered on April 16, 1934, in an action in the Supreme Court of Bronx County, stated that Universal Works and all persons claiming under it were "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in said premises and each and every part thereof."

After foreclosure Universal Works remained on the premises as the Bank's tenant. On August 12, 1937, Universal Works and one of its customers, the Raisler Heating Company, entered into an agreement whereby a new corporation, the Universal Sheet Metal Corp. (hereafter referred to as "Universal Metal") was formed. Raisler purchased all of the Class B stock of the new company and Universal Works (Lantry) received all of the Class A stock in consideration of the transfer by Universal Works of all its assets, subject to certain of Universal Metal's listed liabilities. Both classes of stock were equal in rights but each class separately elected two directors of the newly-formed corporation. Jacob Lantry became

---

[1]. The fire clause provides:

"(c) Should the buildings upon the property described in the preceding subdivision (b) be totally destroyed by fire or otherwise, it is understood and agreed that the aforesaid vacant property, after such total destruction of the buildings, shall be sold as soon thereafter as conveniently possible, and that the price obtained on the aforesaid sale after deducting necessary legal expenses and brokerage, together with whatever net amounts are received from insurance companies by reason of the destruction of the property, shall be added together;

"For the purposes of adjustment as enumerated in the preceding paragraph, when the above two amounts are added together, they shall be deemed the gross selling price of the property, and from this gross selling price shall be deducted the sum of Thirty-eight thousand ($38,-000) dollars, and the balance shall be equally divided between the Universal and Ryan Sadwith."

President and a director of the new corporation, and Jennie E. Lantry, his wife, who is also a defendant, became Vice-president and a director.

Universal Metal continued as the Bank's tenant in the Park Avenue premises until January 1942 when its subsidiary, 4010 Park Avenue Corporation, purchased the premises for $4,000 in cash and a $16,000 purchase money mortgage. In February 1942 the premises were conveyed by the 4010 Park Avenue Corp. to its parent, Universal Metal, for a nominal consideration. In 1951 the premises were totally destroyed by fire and were thereafter rebuilt with all or a substantial part of the insurance money. Subsequently, the property was mortgaged to the Harlem Savings Bank for $80,000 in January 1953. On February 20, 1961, Universal Metal conveyed title to the premises to Jacob Lantry in consideration for the redemption of the Class A stock owned by him. Lantry conveyed an undivided one-half interest in the premises to his wife, Jennie Lantry, on June 2, 1961.

Plaintiff alleges that by virtue of the May 21, 1926, agreement, an express trust was created over the Park Avenue property and that Lantry and the other defendants became trustees for the benefit of plaintiff. In the alternative, Sadwith alleges "that under terms of the agreement the real estate in suit was entrusted by the plaintiff to the defendants pursuant to a joint venture or common enterprise for the purpose of deriving a profit." The plaintiff contends that under either of his legal theories, the defendants are accountable to him. He claims that even though all of the foregoing transactions in the property, including the various mortgages, were effected in the name of the defendants Universal Works and Universal Metal, these corporate defendants were merely nominal owners of the property and that Lantry was the real party in interest since at all times he wholly dominated and controlled the corporations. Sadwith maintains that the defendants, in violation of their fiduciary obligations,

entered into transactions pursuant to a scheme or plan designed to deprive plaintiff of his equitable interest in the property. Moreover, it is alleged that plaintiff was not given notice which he claims was required of any of the transactions and that he did not become aware of the various property transactions until 1961. Consequently, plaintiff seeks to have the defendants' account in equity for the rents and profits from the property and to have the court impress a trust or equitable lien to the extent of plaintiff's interest in the property, whatever that may be.

Defendants, on the other hand, contend that the agreement of May 21, 1926, did not create an express trust or a joint venture and that no fiduciary relationship of any kind was created. They maintain that the only obligation which the defendants Universal Works and Lantry owed to plaintiff was the contractual obligation to pay him $5000 or one-half of the net profits in the event of a "bona fide sale of the premises * * by Universal." Defendants assert that there was never a bona fide sale of the premises by any of the named defendants, and, in particular, by Universal Works, the obligor in the 1926 agreement. Universal Works, the owner of the property from 1926 to 1934, lost the property pursuant to judgment of foreclosure in 1934 and never regained title to the property.

Defendants contend that under any version of the facts no express trust or joint venture was created. And beyond this, they allege that even if an express trust was created it is void and unenforceable because it was created for an illegal trust purpose. See N.Y.Real Property Law, McKinney's Consol.Laws, c. 50; § 96.

For the resolution of these contentions the court must look to the substantive law of New York. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff has assiduously avoided resting his claim for recovery on the theory that the 1926 agreement was simply a contract that

created mutual rights and duties befitting contractual obligor and obligee, and not without reason. On oral argument plaintiff's reason for sidestepping this theory became clear when plaintiff conceded that if the 1926 agreement were a simple contract of sale and did not create a fiduciary relationship then the present action is barred by the six year statute of limitations applicable to actions based upon contractual obligations. N. Y.Civil Practice Act, § 48(1);[2] Lonsdale v. Speyer, 174 Misc. 532, 19 N.Y.S. 2d 746 (Sup.Ct.1938), aff'd, 259 App. Div. 802, 19 N.Y.S.2d 773 (1940) (1st Dept.1940) aff'd 284 N.Y. 756, 31 N.E. 2d 512 (1940); Jaskol v. French, 153 N.Y.S.2d 361 (Sup.Ct.1956).

■ However, if the agreement is deemed to have created an express trust the statute of limitations does not begin to run until "the trustee has openly to the knowledge of the beneficiary, renounced, disclaimed, or repudiated the trust." Lammer v. Stoddard, 103 N.Y. 672, 673, 9 N.E. 328, 329, (1886); Bogert, Trusts and Trustees § 951 (2d ed. 1962). Since plaintiff claims that he was a beneficiary of the trust created by the 1926 agreement, and further, that he did not learn of Lantry's repudiation of the "trust" until 1961, the plaintiff's cause of action for breach of the trust would not yet be time-barred by New York's 10 years statute of limitations applicable to express trusts.

■ Under New York law, "particular words, and least of all, the specific word 'trust,' are not necessary to create a trust, but to accomplish that result 'there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.'" Title Guarantee & Trust Co. v. Haven, 214 N.Y. 468, 481, 108 N.E. 819, 822 (1915) quoting Beaver v. Beaver, 117 N.Y. 421, 428, 22 N.E.

940, 6 L.R.A. 403 (1889). See also Del Drago v. C.I.R., 214 F.2d 478 (2d Cir., 1954).

■ Article Sixth of the 1926 Agreement stated that "each of the parties hereto hereby releases the others from any and all obligations of whatsoever kind and nature, excepting as herein otherwise specifically set forth." Since the parties thereby agreed that their obligations were restricted to those "specifically set forth" and since the agreement does not declare explicitly that an express trust was to be created, it is clear that there has not been the "explicit declaration of the trust," that is required by the New York cases. Furthermore, the circumstances surrounding the creation of the agreement, even accepting plaintiff's version of the facts, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed. 2d 458 (1962); McHenry v. Ford Motor Co., 269 F.2d 18 (6th Cir., 1959), do not show, again adopting the phraseology of the New York cases, "beyond reasonable doubt that a trust was intended to be created."

Apart from the absence of an explicit declaration of trust, the very terms of the agreement, set forth supra, demonstrate that the parties did not intend to establish a trustee-beneficiary relationship. Indeed, the opposite conclusion, that a contract of sale was intended, is considerably better founded.

A somewhat analogous situation was presented to the court in Kahlmeyer v. Green-Wood Cemetery, 175 Misc. 187, 23 N.Y.S.2d 17 (Sup.Ct.1940), modified on other grounds, 261 App.Div. 950, 27 N.Y.S.2d 446 (1941), affirmed, 287 N.Y. 787, 40 N.E.2d 650 (1942), where the court held that plaintiff could not maintain an action for an accounting under a contract because the absence of a trust *res* precluded the creation of a trust in

2. N.Y.Civil Practice Act, § 48(1) provides:
"*Actions to be commenced within six years.*
"The following actions must be commenced within six years after the cause of action has accrued:

"1. An action upon a contract obligation or liability express or implied, except a judgment and except as provided by section forty-seven and forty-seven-a." [sections not applicable here]

favor of plaintiff. "One of the distinguishing features between a contractual relationship and one of trust is the existence of a trust *res*. Under the agreement here the [alleged *res*] received from plaintiff belongs to defendant absolutely. No restrictions are mentioned as to its disposition. * * *" Id. 23 N.Y.S.2d at 20. Similarly, in the instant case the Park Avenue property belonged to Universal Works absolutely with no restrictions as to its disposition, and the property was not transferred to Lantry to be held by him as trustee. Since there was no trust *res* the 1926 agreement could not create a trustee-beneficiary relationship, notwithstanding plaintiff's claims that such was the intention of the parties.

Furthermore, even if the agreement could be interpreted so as to create an express trust it is doubtful whether the purpose for which it was created would be a lawful one pursuant to the provisions of N.Y. Real Property Law, § 96, as it read in 1926.[3] An express trust created for the purpose of dividing the profits to be realized from the sale of real property is not embraced within any of the four categories, set out in Footnote 3, which the trust statute lists as permissible trust purposes. See Firstenberg v. Wasserman, 9 A.D.2d 566, 189 N.Y.S. 2d 411 (3rd Dept. 1959) (accord).

 Plaintiff's alternative theory, that it was the parties' intention that the 1926 agreement was to create a joint venture with relation to the Park Avenue property, is also without merit. "A joint venture or enterprise is, in essence, an informal partnership between two or more persons for a limited undertaking

or purpose." Backus Plywood Corp. v. Commercial Decal, Inc., 208 F.Supp. 687, 690 (S.D.N.Y.1962), aff'd 317 F.2d 339, 2d Cir., 1963; United States v. Standard Oil Corp., 155 F.Supp. 121, 148 (S.D.N. Y.1957), aff'd 270 F.2d 50 (2d Cir., 1959); Wooten v. Marshall, 153 F.Supp. 759, 763 (S.D.N.Y.1957); Leitner v. Wass, 63 N.Y.S.2d 350, 352 (Sup.Ct. 1946). The relationship between joint venturers is fiduciary in character and a joint venturer may proceed in equity to have a constructive trust placed upon the property, Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928), or he may seek an accounting upon proof of a breach of his joint venturer's fiduciary obligation, Schantz v. Oakman, 163 N.Y. 148, 57 N.E. 288 (1900).

 To be sure, intent is essential for the creation of a joint venture. But intent, without more, and absent the other requisites essential to a joint venture agreement is not enough. Whatever may have been the plaintiff's intention, the 1926 agreement does not qualify as a joint venture agreement because certain essential requisites are lacking. "The ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit." Steinbeck v. Gerosa, 4 N.Y.2d 302, 317, 175 N.Y.S. 2d 1, 13, 151 N.E.2d 170, 179 (1958), appeal dismissed 358 U.S. 39, 79 S.Ct. 64, 3 L.Ed.2d 45 (1958); Hasday v.

---

**3.** N.Y.Real Property Law, § 96 as it read in 1926, provided:

"*Purposes for which express trusts may be created.*—

"An express trust may be created for one or more of the following purposes:

"1. To sell real property for the benefit of creditors;

"2. To sell, mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon;

"3. To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term, subject to the provisions of law relating thereto;

"4. To receive the rents and profits of real property, and to accumulate the same for the purposes, and within the limits, prescribed by law. * * *"

Barocas, 10 Misc.2d 22, 28, 115 N.Y.S. 2d 209, 215 (Sup.Ct.1952). In the instant case there is no indication whatever that the parties to the agreement intended to join their "property, interests, skills and risks" or that each party could act for their joint benefit in the operation and disposition of the Park Avenue property. The only interest that plaintiff had in the property was the right to receive $5000, or one-half of the net proceeds in the event of the bona fide sale of the property by Universal Works. Or, in the event of a totally destructive fire Universal Works was required to sell the property and plaintiff was to share in these proceeds as well as the proceeds from any fire insurance policies. Under no circumstances, however, can the agreement be interpreted as giving plaintiff a voice in the management or control of the property. The only occasion when plaintiff could compel Universal Works to dispose of the property was in the event of the total destruction of the buildings by fire or otherwise. It is clear therefore that plaintiff did not have the right to control the execution of the transaction, the sale of the property, for which he claims the joint venture was created. Plaintiff's failure to reserve to himself the right of joint control is fatal, for "joint control" is an essential element of a joint venture. See Wagner v. Derecktor, 306 N.Y. 386, 118 N.E.2d 570 (1954). Moreover, the agreement is devoid of any understanding that plaintiff was to share in the losses of the alleged venture and loss-sharing is but another essential ingredient of a joint venture agreement, see Steinbeck v. Gerosa, supra, 4 N.Y.2d at 318, 175 N.Y.S.2d at 13, 151 N.E.2d at 179; Jasper v. Bernstein, 259 App.Div. 638, 20 N.Y.S.2d 362 (1st Dept. 1940); Byrne v. Blaker Advertising Agency, 239 App. Div. 395, 267 N.Y.S. 662 (1st Dept. 1933), and the plaintiff's allegations which attempt to construct a loss-sharing arrangement are wholly insubstantial.

The court's statement in Wagner v. Derecktor, supra, 306 N.Y.2d at 390, 118 N.E.2d at 572, in concluding that no joint venture was created, is applicable here: "One finds nothing in the agreement about the parties pooling their efforts, about a mutual right to control the carrying out of the transaction, that plaintiffs were to share in the losses, or that they joined their interests, risks and skills." The court has examined the myriad cases cited by plaintiff in support of a trust or joint venture construction and has found them inapposite. Furthermore, even if the agreement had created a joint venture the present action would be barred by the ten-year statute of limitations which is computed from the time the joint venturer committed the act for which a constructive trust is sought to be imposed. N.Y.Civ.Prac.Act, § 53;[4] Scheuer v. Scheuer, 308 N.Y. 447, 126 N.E.2d 555 (1955); Lammer v. Stoddard, 103 N.Y. 672, 9 N.E. 938 (1886). But see Bogert, Trusts and Trustees § 953 at 493 (2d ed. 1962). Thus, the statute of limitations has run if the constructive trust can be deemed to have been created in either 1926, at the time the agreement was made, or at any time prior to 1934 when the property was foreclosed and Universal Works lost all its interest in the property.

The court finds that under any version of the facts as related by plaintiff the elements necessary to create either an express trust or a joint venture are not present in the 1926 agreement. Therefore, plaintiff's cause of action is barred by the six-year statute of limitations applicable to the 1926 contract. N.Y.Civ.Prac.Act, § 48(1).

Accordingly, defendants' motion for summary judgment is granted. So ordered.

---

4. N.Y.Civ.Prac.Act, § 53 provides:
 "Limitation where none specially prescribed.
 "An action, the limitation of which is not specifically prescribed in this article, must be commenced within ten years after the cause of action accrues."