This action was brought, as appears by the complaint, upon the theory that the defendant bank had participated in the fraud by which William E. Gray Co. procured a loan from the plaintiffs of their two checks, amounting to $40,000. The proof entirely failed to sustain that theory, and the action is now sought to be sustained upon a very different one. What that is will appear from a short statement of the case.
Gray, on the 10th of December, 1869, borrowed of the plaintiffs their check for $30,000, and, a few minutes later, another for $10,000. These loans were made upon collaterals *Page 480 
of the apparent value of $44,000, consisting, in appearance, of United States and New York State bonds. The checks were drawn on the Bank of the State of New York, were payable to the order of Gray Co., were good, and were certified to be good by the bank. These checks were deposited by Gray Co. in the ordinary way of business, to the credit of their bank account with the defendant, in which bank they had for some months kept a bank account. They were taken by the defendant and placed to Gray Co.'s credit as cash, and the defendant received the money upon them in due course from the Bank of the State of New York, and there is no ground for saying that the defendant had, or had any reason to have, any suspicion in respect to Gray Co.'s right to these checks, or to the money which they represented. Indeed, being certified to be good, and having been actually paid, they are to be regarded as money for all purposes. (First National Bank v.Leach, 52 N.Y., 350.) In passing them to Gray Co.'s credit the defendant was guilty of no carelessness, and neglected no precaution which even the most prudent could practice. The effect of this transaction was to make the defendant debtor to Gray 
Co. for the amount of the checks, and to pass the title to the checks to the defendant. (Ætna Bank v. Fourth Nat. Bank,46 N Y, 82; Van Alen v. Am. Nat. Bank, 52 id., 8.) Nor is there any doubt, however much the plaintiffs may have been defrauded by Gray Co., in respect to the securities placed in their hands by Gray Co., that they intended to give to Gray Co. their checks as the property of the latter, with full power of disposition in respect to them. They looked to the security they had taken for their protection. The transactions between Gray Co. and the defendant appear, so far as can be material in the case. Gray 
Co.'s account was credited during the day, December 10, 1869, with $124,363.47. It was charged with payments amounting to $119,390.31, including a balance of $1,105.05 from the preceding day. On the eleventh it was further charged with payments upon checks drawn on the tenth for $1,716.85, *Page 481 
leaving to the credit of Gray Co., at the end of these transactions, $3,256.31. The first credit to Gray Co. is of $30,000, which was loaned to them by the defendant on the morning of the tenth, to be repaid that day, on what appeared to be three New York State bounty bonds, each purporting to be for $10,000, and which were received by defendant as security. This sum, with two other items of credit, amounting together to $59,363.47, preceded the deposit of the checks of the plaintiffs. The plaintiffs' check for $30,000, was next deposited, and then that for $10,000, which together with the check of another party for $25,000, completed the sum of their deposits. Against these credits there are charged as paid, first in order, checks amounting, with the balance from the ninth, before mentioned, to the sum of $65,027.81. These appear to have been paid before the checks for $10,000 and $20,000, presently to be considered, were presented. These payments were sufficient to exhaust the credits previous to the deposit of the check for $30,000, given by the plaintiffs, and also so much of that sum as to leave undrawn only $24,335.66, which we must regard as the amount remaining to the credit of Gray Co. at that period. The next transaction consisted in the payment to the defendant of $10,000, part of the loan of $30,000, made by defendant to Gray Co., and passed to their credit at the commencement of business on that day. This payment was effected by the check of Gray Co., on the defendant, which was given on receiving back one of the three New York bounty bonds for $10,000, on the security of which the loan had been made. Concerning this bond, nothing further appears, and it must, therefore, be presumed to have been genuine. This check reduced the amount standing to the credit of Gray Co., to $14,335.66. The last deposit of $35,000, made up as before stated, increased the balance to $49,335.66. The next check presented was for $20,000, to pay the residue of the $30,000 loan, which remained unpaid, and to take up the two remaining bounty bonds held by the defendant as security therefor. Some circumstance had *Page 482 
drawn the attention of the officers of the defendant to these two bonds, and upon examination and inquiry of the agent of the State, they were found to be altered from $1,000 bonds. While this was occurring, Gray was waiting in the bank with his check to take up the bonds. When the fact in respect to the bonds was communicated to him, he at once paid, by his check, the balance due from him to the defendant, on the $30,000 loan, and turned over the bonds to the State agent, who was also cashier of the Manhattan Bank, to await further action or inquiry. All this was done by Gray in such a manner, and his explanations were so straightforward, that the persons concerned believed that he might have been imposed upon in respect to these bonds. Subsequently, another check for $24,362.50 was presented and paid by being credited to the presenter, and on the next day, three other checks were presented and paid, amounting to $1,716.85, reducing the balance to the credit of Gray Co., to the sum of $3,256.31, as before stated.
On the night of the tenth, Gray absconded. It will be observed that nothing had occurred to excite the least suspicion in respect to any of the items which had gone to Gray Co.'s credit in the bank account with the defendant. Nor, so far as the case discloses, did the plaintiffs come to suspect that they had been imposed upon until some time after; for it appears that it was not until the thirteenth of January, or a day or two before, that the plaintiffs applied to the defendant on the subject. On that day they proposed to transfer to the defendant the securities, genuine and forged, which they had received from Gray Co., and demanded that it should pay the $40,000 which it had received from the plaintiffs' checks. It had turned out in fact, that of the $44,000 of securities, the plaintiffs had received $7,000 genuine United States coupon bonds, and two New York State bonds, originally genuine, and for $1,000 each, and which had been altered to $10,000. On these facts the plaintiffs now seek to recover substantially for money had and received by the defendant to their use. In support of this claim they now *Page 483 
insist that the same rules shall be applied to the defendant's right to retain the money which it has received, as would have been applicable if Gray Co. had, by the same fraud, obtained their promissory notes and had passed them to the defendant under the same circumstances as the checks were passed, and the defendant was now prosecuting them on the notes. In this supposition the plaintiffs are mistaken. They are the parties who were cheated by Gray Co.; and the loss by the fraud on them cannot be transferred to the defendant, an entirely innocent party. The money which the defendant has received, came in the regular course of business, in a form as current as if it had been bank notes or United States currency. If it can be followed by reason that the party who paid it procured it fraudulently, for aught I see, the transaction of business must stop, for no inquiry and no precaution could guard the receiver from responsibility. There is a class of cases of which Van Alen v.American National Bank (52 N.Y., 8) is a good illustration, where property intrusted to an agent is disposed of by him in fraud of his principal, in which it has been held that it or its proceeds may be followed so long as it can be traced. And further, that the fact that it has been converted into money and mingled with other money of the agent, does not, as was formerly supposed, create a barrier to the attainment of justice. And the extent to which this rule is now carried, is well shown inPennell v. Deffell (4 De Gex., M. G., 372) where the whole matter is very thoroughly and ably treated. But in the case cited (52 N.Y., 8), the defendant set up no lien upon or claim to the money and was merely in the position of objecting to the plaintiffs' title, without claiming any itself. This state of facts did not call for or admit of any determination how such a claim could have been sustained on the part of the defendant. Two cases are cited from Chancellor WALWORTH as maintaining the broader doctrine necessary to be maintained by the plaintiffs in this case, in each of which on a question as to continuing an injunction which had been issued, he held that where *Page 484 
money had been obtained by fraudulently overdrawing a bank account, and the money had been deposited, in the one case in the hands of a friend and confederate, and in the other in a bank, it might be followed in equity. In neither case was any right set up in favor of the depository, and, therefore, there was no occasion for saying anything about the consideration which would sustain a claim, to retain it against the defrauded party. (Tradesman'sBank v. Merritt, 1 Paige, 302; Mechanics' Bank v. Levy,
3 id., 606.)
In the absence of trust or agency I take the rule to be that it is only to the extent of the interest remaining in the party committing the fraud that money can be followed as against an innocent party having a lawful title founded upon consideration; and that, if it has been paid in the ordinary course of business, either upon a new consideration or for an existing debt, the right of the party to follow the money is gone. As was said by PARKER, Ch. J., in Mason v. Waite (17 Mass., 563), it would be mischievous to require of persons who receive money in the way of business or in payment of debts to look into the authority of him from whom they receive it. That case turned on the fact that the defendant received the plaintiff's money unlawfully, and he was held liable on that ground. The same doctrine was substantially held in Clarke v. Shee (Cowp., 197), and inNeate v. Harding (6 W., H. G., 349) where it was decided that money, which came illegally or mala fide into the hands of a party, might be followed by the true owner.
But if it should be deemed essential to the defendant's right to retain the money received on these checks, that it should be a holder for value, I think it should be so regarded. It parted with and gave up the $10,000 bounty bond, and the two altered $1,000 bonds which the State agent said were good for their original amount, and which, undoubtedly, in favor of an honest holder, would have been recognized to that extent by the State. It, moreover, actually paid out $26,079.35 on checks subsequently presented, which would not have been paid save for the credit which Gray Co. *Page 485 
obtained by the deposit of these checks; for, obviously, if their account had not been credited with these checks, that for $20,000 drawn by them to pay the bank for the residue of the $30,000 loan would still have been paid, and the failure would have fallen upon the checks afterward presented.
The defendant, also, in reliance on this money, was led to abstain from any attempt at securing itself in other ways by the arrest or pursuit of Gray. To allow this claim to be set up so long after the transaction took place seems to me, in a high degree, inequitable. (Continental Bank v. Nat. Bank ofCommonwealth, 50 N.Y., 575.)
I am of the opinion, therefore, upon these grounds, that the defendant is entitled to be protected in its dealings with Gray 
Co. to the extent of its interest; and that, in respect to the balance remaining to Gray Co.'s credit, as no question was made in respect to that at the trial, nor the attention of the court called to it in any way, it cannot now be availed of to disturb the judgment.
The judgment should be affirmed.
All concur.
Judgment affirmed.