HENRY W. JOHNSON AND OTHERS, RESPONDENTS, *v.* THE FIRST NATIONAL BANK OF HOBOKEN, APPELLANT.

*Check with forged indorsement — liability of person receiving and collecting — production of check on trial.*

A clerk of the plaintiffs, having received from certain of their debtors checks payable to their order in payment of the amounts due, wrongfully and without authority indorsed on them the names of the plaintiffs and transferred them to other persons, appropriating the proceeds to his own use. Subsequently these checks were deposited with, and in good faith collected by, the defendant, and the proceeds thereof paid over to the depositors. In an action by the plaintiffs to recover the amount so collected, *held*, that they were entitled to recover.

*Talbot* v. *Bank of Rochester* (1 Hill, 295) followed.

Upon the trial plaintiffs produced a portion, but not all, of the checks received and collected by the defendant. *Held*, that as their inability to produce the others arose from the wrongful acts of the defendant, they were entitled to recover the whole amount collected.

*Van Alstyne* v. *National Commercial Bank of Albany* (7 Trans. App., 241; 4 Abb. Dec., 449) distinguished.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury.

The plaintiffs, who were partners, doing business under the firm of Johnson & Higgins, complained that, between November 13th, 1867, and November 10th, 1870, they were the owners of a series of bank checks, all payable to their order; that the checks were of the value of their face; that they were stolen from them, and their indorsement forged thereon, and that the checks came to the possession of the defendant who collected them from the bank on which they were drawn.

The answer put in issue the material allegations of the complaint.

It appeared upon the trial that the plaintiffs were in business as average adjusters; that the checks were paid to and collected by a clerk in their employ, by whom the charges were marked off as paid. He, however, retained the checks, and subsequently they were received and collected by the defendant with the indorsement of the plaintiffs forged upon them. The amounts so collected were paid out by the defendant before it had any notice or suspicion that the indorsements were forged.

Five of the checks, upon which the plaintiffs recovered, they obtained from the drawers for the purposes of the trial. As to the others, the defendant specially objected that there could be no recovery, upon the ground that the plaintiffs could not surrender or return them.

*E. L. Fancher*, for the appellant.

*John E. Parsons*, for the respondents.

DANIELS, J.:

The recovery in this action was for the amount of money, and interest upon it, which the defendant had collected and received upon checks drawn by persons owing the plaintiffs, payable to their order and delivered to their clerk, who was authorized to receive them in payment of the debts they were intended to pay, but who, without their authority, indorsed their firm name upon them and transferred them to other persons. These checks were received by the defendant in the usual course of its business, some of them near the time of their dates, and others after the intervention of a considerable period of time. The bank paid value for them, without notice that the name of the plaintiff's firm had been indorsed upon them without their knowledge or authority; and it collected them from the banks, upon which they had been drawn, in ignorance of that fact. No question was made at the trial as to the sufficiency of the evidence given to establish these facts, and it was not claimed to be in any respect defective when the appeal taken was argued. But it was urged that, as the defendant had paid out the proceeds of the checks without notice of the forgery of the plaintiff's indorsement, it could not be made liable for the money received upon them. This position, however, cannot be sustained in view of the principle settled by the decision made in the case of *Talbot* v. *Bank of Rochester* (1 Hill, 295). It was there held that the defendant was liable to the owner for the proceeds of a certificate of deposit which it had received and collected on the faith of a forged indorsement. And no reference was made to the fact that it did not appear whether the money had been paid over to the depositor or not. The defendant was held

liable because it had received and collected the obligation owned by the plaintiff in the action, and by those acts had become liable to him for the amount realized from it. While the statement of the case does not show how the fact was, it is highly probable that it appeared that the proceeds had been paid over by the defendant; for if they had not, it is difficult to perceive how any question could have been made concerning the liability of the defendant to pay them to the true owner of the paper. The mere fact that the money of the plaintiffs collected by the defendant without right, was afterward paid over to other persons, should not, upon principle, discharge the defendant from liability. That occurred at once, in the present case, as soon as the checks were disposed of and the money was received upon them. The defendant then, in judgment of law, held it for the plaintiffs, who were its lawful owners; and it could not be exonerated from its obligation by paying the amount to others, who had never been authorized to receive it. In making such payment, as well as in the conversion of the checks, unindorsed by them, into money, it acted so far in hostility to their rights, as to become liable to them for the loss so occasioned. This is a general principle well settled in the law; and it includes commercial paper, not in a condition to be negotiated, as well as other property. The party receiving and disposing of it, in that condition, without authority, cannot avoid liability by showing that its conduct was governed by good faith (*Boyce* v. *Brockway*, 31 N. Y., 490), or that it afterward paid over the proceeds to persons not in fact entitled to receive them. The case of *Justh* v. *Nat. Bank of the Commonwealth* (56 N. Y., 478), was relied upon, at the argument, as an authority protecting the defendant against liability. But the checks received there, were in form properly negotiated, so that the title to them vested in the defendant; and it was protected in the payment which it made of their proceeds by that circumstance, inasmuch as it acted in good faith and without notice of the fraud through which the plaintiffs were induced to part with them. In the present case, the defendant acquired no title to either the checks or the money, and could not do so, simply by means of the unauthorized indorsement of the plaintiffs' clerk. That circumstance

distinguishes this from the case cited, and renders that inapplicable as an authority. But five of the checks were produced at the trial, and it was insisted that the recovery, for that reason, must be limited to their amount; the court, however, held otherwise, and allowed the other seven to be included in the verdict. They were all proved by the evidence given, and the plaintiffs' title appeared to be the same as to all of them, and all had been converted in the same manner by the defendant. No good reason seems to exist. for distinguishing between them as to the defendant's liability. The reason why they were not produced was, the disposition which the defendant had wrongfully made of them; and it should not be allowed to protect itself from liability by the fact that it had placed the plaintiffs' checks beyond their reach. The case of *Van Alstyne* v. *National Com. Bank of Albany* (7 Trans. Apps., 241; 4 Abb. Dec., 449), maintains no such conclusion; the action was upon a draft then held by a bank, in another State, to which it had been negotiated by means of a forged indorsement; and it was held that those facts did not excuse the failure to produce it in an action by the owner against the drawer. (See also, *Crandall* v. *Schroeppel*, 1 Hun, 557.) There the drawer had done nothing to deprive himself of his right to the paper on making payment, while, in this case, the defendant's own wrong had placed the checks beyond the control of the plaintiffs; and for that act and the tortious disposition made of the proceeds, it was rightly held to be liable. The position taken, that the money received by the defendant did not belong to the plaintiffs, is in direct conflict with the case of *Talbot* v. *Bank of Rochester* (*supra*). They became the owners of the checks as soon as they were received for them by their clerk; and when, without any lawful right, the defendant converted them into money, the proceeds were substituted for them, and subject to the plaintiffs' demand as their property. The defendant was liable as a wrong-doer; and it was no answer to the plaintiffs' claim that they might still secure redress in some other way. The Bank may protect itself by resorting to the persons from whom the checks were taken by it; but it cannot justify the wrong done, by the circumstance that the plaintiffs might have secured satisfaction by proceeding against other persons not implicated in it. The remedy, if it exists, would be difficult; and the plaintiffs were not bound to

pursue it for the purpose of shielding the defendant from the consequences of its own unauthorized acts. The judgment should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed.