NASSAU BANK v. NATIONAL BANK OF NEWBURGH et al.

(Supreme Court, Appellate Division, Second Department.   July 11, 1898.)

PAYMENT—FUNDS OBTAINED BY FRAUD—RIGHT OF CREDITOR TO RETAIN.
   If one draws money from another's bank account on a forged check, and then restores it by depositing in the same account a forged check on another bank, which the latter pays, it is the former bank, and not its depositor, to whom the forger became indebted, and whose claim was thus repaid; and, though it had no knowledge of either forgery or of the debt, it is not liable to restore to the other bank the amount received by it on the second forged check.

   Appeal from judgment on report of referee.

Action by the Nassau Bank against the National Bank of New- burgh, impleaded with John Thorn and Thomas J. Adderton.   From a judgment for defendants, entered on a report of referee, plaintiff appeals.   Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John M. Gardner, for appellant.
Howard Thornton and E. A. Brewster, for respondents.

CULLEN, J.   The individual defendants, as executors of Adderton, were depositors with the defendant bank.   One Grant B. Taylor, an attorney at law, was the counsel for the executors.   He forged the name of the executors to certain checks, and, by these checks, ob- tained from the defendant bank the sum of $2,400.   Afterwards Taylor opened an account in the plaintiff bank, and deposited with it

a draft for $6,000, drawn by the Columbus Trust Company on the Chase National Bank, and payable to the order of one Charles Curie. The name of Curie and that of Taylor were indorsed on the draft. Taylor then drew his check on the plaintiff bank, to the order of the estate of John L. Adderton, for $2,400. This check he indorsed, "For Deposit Est. John L. Aderton, by G. B. Taylor," and deposited the same with the defendant bank to the credit of the defendant executors. The check was collected by the defendant bank through its correspondent in New York City and the clearing house, in the usual course of business. Subsequently the plaintiff bank discovered that the indorsement of Curie was not made by him nor by his authority. There is something singular about this draft, which is not explained by the evidence. Curie testified that the indorsement was not his, not authorized by him. But the plaintiff conceded that the proceeds of the draft did not belong to Curie, and that he made no claim on them. Who really owned the funds represented by this draft does not appear; and the referee, while he has found that Taylor wrote Curie's indorsement, has not found that it was a forgery, or that Taylor was not the real owner of the draft. Upon discovering the fact that Curie's signature was not genuine, the plaintiff bank repaid the Chase National Bank the sum of $6,000, and took back the draft. Thereupon it brought this action to recover of the defendants the sum of $2,400, collected by them on Taylor's check. The referee reported in favor of the defendants that the complaint should be dismissed on the merits; and, from the judgment entered on his report, this appeal is taken.

It is conceded by the learned counsel for the appellant that the check drawn by Taylor on the plaintiff is to be considered as money, and that the effect of the transaction is the same as if Taylor had drawn the money from the plaintiff, and paid it to the defendant bank. It is also conceded that it is settled law in this state, under a line of authorities, that money, whether obtained by fraud or by felony, cannot be recovered where it has been paid to the creditors of the party who has thus criminally obtained it, even when the only consideration for the payment was the satisfaction of an antecedent debt. Justh v. Bank, 56 N. Y. 478; Stephens v. Board, 79 N. Y. 183; Goshen Nat. Bank v. State, 141 N. Y. 388, 36 N. E. 316; Hatch v. Bank, 147 N. Y. 184, 41 N. E. 403. The principle on which these decisions rest is thus stated by Judge Finch in Hatch v. Bank, supra:

"This doctrine goes upon the ground that money has no earmark; that, in general, it cannot be identified as chattels may be; and that to permit, in every case of the payment of a debt, an inquiry as to the source from which the debtor derived the money, and a recovery if shown to have been dishonestly acquired, would disorganize all business operations, and entail an amount of risk and uncertainty which no enterprise could bear."

It is clear that under this rule, had either the defendant bank or the defendant executors known of Taylor's first forgeries (the checks aggregating $2,400), and received his check on the plaintiff bank on account of the claim that either one or the other of the defendants had against him on account of those forgeries, the plaintiff's action could not be maintained. This the appellant does not

·deny. The only question therefore presented upon this appeal is whether the facts of this case place it outside the general rule.

Prior to the time of the commencement of this action, all the defendants were ignorant of Taylor's wrongdoing. The forgery of the ·checks for $2,400, of course, did not in reality diminish the debt of the defendant bank to the defendant executors. The party defrauded by those forgeries was the defendant bank, and it alone had a claim against Taylor for the amount of the forgeries. When Taylor subsequently deposited with the defendant bank the sum of $2,400 to the credit of the executors of Adderton, the effect of the deposit was not to increase the claim of the executors against the bank by the amount of that deposit, but to repay to the bank the amount that Taylor had fraudulently obtained from it. This was undoubtedly the intent of Taylor in making the deposit. He owed the executors nothing. He owed the bank $2,400. The form that the transaction took is not controlling. Taylor had defrauded the bank so deftly that it was not aware of its loss. When he made restoration, it was necessary that he should make it in such form that it would not expose his original crime. But, as already said, though the form did not represent the true nature of the deposit, the purpose was certain. The defendant executors could not recover from the defendant bank the amount of the deposit, for it was not intended to be made for their benefit. In fact, the whole question is narrowed to this: Where one person defrauds another so skillfully that the party defrauded is ignorant of his loss, and restitution is made so adroitly that it does not disclose the original offense, does any different rule ·obtain from a case where one confesses his fault, and openly makes restitution? We apprehend there can be no distinction between the two cases, and that the very statement of the question precludes the possibility of but one answer. The judgment of the learned referee was therefore correct.

The special term directed that separate bills of costs be allowed the defendants. We think that this direction was unauthorized. This was an action in equity, where the costs were in the discretion of the court. By section 1022, Code Civ. Proc., where the whole issues in an action are referred, the award of costs can be only made by the referee.

The judgment appealed from should be modified so as to direct that the defendants recover but one bill of costs, and, as modified, ·affirmed, with costs. All concur.