PITTSBURGH-WESTMORELAND COAL COMPANY, Respondent, *v.* JOHN K. KERR et al., as Administrators with the Will Annexed of WILLIAM B. KERR, Deceased, Appellants, Impleaded with Others.

Subrogation — an equitable remedy to compel payment of a debt by one who in justice, equity and good conscience ought to pay it — when right of subrogation applicable and effective — wrongful use of money of which plaintiff had an assignment — when plaintiff may be subrogated to rights of bank and maintain action for such money against estate of indorser of note — moneys obtained by fraud — when followed.

1. The right of subrogation or of equitable assignment is not founded upon contract nor upon the absence of contract, but upon the facts and circumstances of a particular case and upon principles of natural justice. The remedy is no longer limited to sureties and *quasi* sureties, but includes so wide a range of subjects that it has been called the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it."

2. Where a payment with the money of another wrongfully obtained operates to discharge a lien, or a debt that is secured by collateral, or by the indorsement of another, the debt may in equity be deemed alive for the benefit of the person whose money was so wrongfully used by the debtor, and such person may be subrogated to the rights of the one who owned the debt, and the debt be deemed transferred and assigned to such person.

3. The defendant bank was the owner of a promissory note, the maker of which had entered into a contract with plaintiff, whereby he assigned to it his interest in certain moneys to become due him on a contract with a third party, with the provision that such maker should collect the money and pay it to the assignee. When, however, the maker of the note received the moneys due on the contract, he used part of them to pay his note to the defendant bank, obtained possession of the note and destroyed it. Three days thereafter the indorser on the note died, and seven days thereafter the maker went into voluntary bankruptcy. Plaintiff in this action seeks to be subrogated to the rights of the bank as they existed immediately prior to such unlawful and wrongful application of plaintiff's money. The administrators of the deceased indorser appealed from a judgment in plaintiff's favor, which judgment was unanimously affirmed by the Appellate Division. All of the facts and circumstances show that the appellants have not been injured by what has occurred. Hence, under the circumstances disclosed, the note should be considered alive and equitably assigned to the plaintiff, that the maker and estate of the indorser may be held thereon for his benefit.

4. Plaintiff's recovery may also be sustained upon the general theory that where negotiable securities are stolen or obtained through fraud the owner may follow and claim them or the proceeds thereof in the hands of the felonious taker, or in any other hands to which they had been transferred, unless intervening equities interfere. (*Lancey* v. *Clark*, 64 N. Y. 209; *Eastman* v. *Plumar*, 32 N. H. 238, distinguished.)

*Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 171 App. Div. 887, affirmed.

(Argued January 31, 1917; decided February 27, 1917.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 21, 1915, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry W. Killeen* and *Roland Baxter* for appellants. The equities of William B. Kerr as an accommodation

indorser are at least equal to the equities of the plaintiff, and in case of equal equities, subrogation is not allowed.   (*Strickland* v. *Magoun*, 119 App. Div. 117; *Title G. & T. Co.* v. *Haven*, 196 N. Y. 487; 214 N. Y. 468; *Union Trust Co.* v. *M. & P. J. R. Co.*, 63 N. Y. 311; 27 Am. & Eng. Ency. of Law, 238; *Royal Arcanum* v. *Cornelius*, 198 Penn. St. 46; *Makeel* v. *Hotchkiss*, 190 Ill. 319; *Justh* v. *Nat. Bank*, 56 N. Y. 478; *Nassau Bank* v. *Nat. Bank*, 159 N. Y. 456.)   When the maker of the note paid the note with money which was apparently his, the note was discharged as a matter of law, and it cannot be revived as against the indorser by subrogation, or otherwise.   In such a case equity follows the law.   (*Lancey* v. *Clark*, 64 N. Y. 209; *Eastman* v. *Plumar*, 32 N. H. 238; *Carson* v. *Heath*, 86 Ga. 438; *Moran* v. *Abbey*, 63 Cal. 56; *Peoples & Drover's Bank* v. *Craig*, 63 Ohio St. 374; *Greening* v. *Patten*, 51 Misc. Rep. 146, 150; *Citizens Bank* v. *Lay*, 80 Va. 436; *Riddle* v. *Russell*, 117 Iowa, 533; *Henderson* v. *Schaffer*, 110 La. 481; *Lee* v. *Field*, 54 Pac. Rep. 837; *Binford* v. *Adams*, 104 Ind. 41.)

*Frank Gibbons* for respondent.   The doctrine of subrogation is one of equity and benevolence.   Its basis is the doing of complete, essential and perfect justice between all the parties without regard to form.   Its object is the prevention of injustice.   The right does not necessarily rest on contract or privity but upon principles of natural equity.   (37 Cyc. of L. & P. 363–366; *Morehouse* v. *Brooklyn H. R. R. Co.*, 185 N. Y. 520; *Pease* v. *Eagan*, 131 N. Y. 262; *Dunlop* v. *James*, 174 N. Y. 416; *Cole* v. *Malcolm*, 66 N. Y. 363; *Arnold* v. *Green*, 116 N. Y. 566; *Townsend* v. *Whitney*, 75 N. Y. 425; *Culliford* v. *Walser*, 3 App. Div. 266; *Mackenna* v. *Fidelity Trust Co.*, 184 N. Y. 411; *Matthews* v. *Fidelity Title & Trust Co.*, 52 Fed. Rep. 687; *Cotton* v. *Dacey*, 61 Fed. Rep. 481.)   It would be inequitable to create any legal

fiction by means of which either John K. Kerr or William B. Kerr could have obtained the benefit of the plaintiff's money which had been stolen from it by John K. Kerr. Furthermore, William B. Kerr, so far as the plaintiff and the Third National Bank of Buffalo are concerned, was primarily liable, because the note was past due and had been protested. (2 Parsons on Notes & Bills, 243; *Trimble* v. *Thorn*, 16 Johns. 152; *Ross* v. *Jones*, 22 Wall. 576; *First Nat. Bank* v. *Wood*, 71 N. Y. 405; *Ger.-Am. Bank* v. *Niagara Cycle Co.*, 13 App. Div. 450; *Crampton* v. *Foster*, 29 App. Div. 215; *Converse* v. *Cook*, 31 Hun, 417; *Bradford* v. *Corey*, 5 Barb. 461.)

CHASE, J. This action is brought to subrogate the plaintiff to the right which the Third National Bank of Buffalo had in a certain promissory note on the 23d day of October, 1911, and to recover judgment for the amount of said note, interest and protest fees.

The doctrine of subrogation is a device to promote justice. We shall never handle it unwisely if that purpose controls the effort and the resultant equity is steadily kept in view. (*Acer* v. *Hotchkiss*, 97 N. Y. 395.)

On October 23, 1911, the bank was the owner of a promissory note of $2,500 made by one John K. Kerr and indorsed for his accommodation by his uncle, William B. Kerr. It was due that day at said bank, but was not paid. It was duly presented for payment, and payment refused, whereupon it was duly protested for non-payment, of all which the indorser had due notice.

Prior thereto the maker of the note had entered into a contract in writing with the plaintiff by which contract the plaintiff had agreed to furnish for him and ship to a corporation in Canada, certain coal upon a credit of thirty days, to apply upon a contract which the maker of the note then had with said corporation. It was by said contract agreed, and the maker of said note did "therein and thereby sell, assign, and transfer unto the

plaintiff his interest in and to his aforesaid contract with the Canada Iron Corporation, Limited, as collateral security for the payment of the said indebtedness and did promise and agree that the indebtedness thus transferred should be collected by him as agent for the plaintiff and that all funds received in that way should be deposited by the defendant John K. Kerr in a bank and that he would thereupon and immediately thereafter send to the plaintiff a draft in full settlement of the purchase price of such coal."

The plaintiff in September, 1911, in accordance with the terms of said contract, delivered to said corporation coal, for which, pursuant to its agreement with the maker of said note, it agreed to pay $6,241.07. It gave its promissory note therefor payable to the order of John K. Kerr. On October 24, 1911, John K. Kerr transferred said note of $6,241.07 to the Third National Bank and placed the proceeds thereof to his account. Under the agreement it then became his duty to obtain and send to the plaintiff a draft for $6,099.22, but instead of doing so he obtained from said proceeds and sent to the plaintiff a draft for $3,500, and wrongfully and unlawfully converted the balance of $2,599.22 to his own use and from said amount paid to the bank the amount due on said note of $2,500 and destroyed the same. Three days thereafter the indorser of said $2,500 note died, and seven days thereafter the maker of the said note entered into voluntary bankruptcy. The note having been paid by the wrongful and unlawful application of plaintiff's money, it seeks to be subrogated to the rights of the bank as they existed immediately prior to such unlawful and wrongful application of its money.

When the plaintiff's money to an amount equal to the sum due on the note in question was transferred to the bank and John K. Kerr thereby obtained possession of the note and destroyed it, the note was in form paid, and canceled, but it was not in equity and justice a "pay-

ment in due course by or on behalf of the principal debtor " within the meaning of section 200 of the Negotiable Instruments Law. (Cons. Laws, ch. 38.)

'One cannot make himself the creditor of another by the unsolicited payment of his debts. (*Kelley* v. *Lindsey,* 7 Gray, 287; *Homestead Co.* v. *Valley R. R.* 17 Wall. 153, 167; *Title Guarantee & Trust Co.* v. *Haven,* 196 N. Y. 487; *Nassau Bank* v. *National Bank of Newburgh,* 32 App. Div. 268; affd., 159 N. Y. 456.)

It may be assumed that ordinarily money although obtained by fraud or felony cannot be recovered when it has been paid to the creditors of the party who has thus criminally obtained it even when the only consideration for the payment was the satisfaction of an antecedent debt. (*Nassau Bank* v. *National Bank of Newburgh, supra; Stephens* v. *Board of Education,* 79 N. Y. 183; *Justh* v. *National Bank of Commonwealth,* 56 N. Y. 478; *Hatch* v. *Fourth National Bank,* 147 N. Y. 184.)

Where, however, a payment with the money of another wrongfully obtained, operates to discharge a lien (*Title Guarantee & Trust Co.·* v. *Haven, supra; Title Guarantee & Trust Co.* v. *Haven,* 214 N. Y. 468), or a debt that is secured by collateral, or as in this case by the indorsement of another, the debt may in equity be deemed alive for the benefit of the person whose money was so wrongfully used by the debtor and such person may be subrogated to the rights of the one who owned the debt and the debt be deemed transferred and assigned to such person. The rule stated is founded in equity. Because it is equitable it is enforced by the courts at all times unless there are surrounding circumstances and intervening. equities that require a different conclusion. The following authorities among others sustain the principle upon which the rule is founded: *Title Guarantee & Trust Co.* v. *Haven* (196 N. Y. 487); *S. C.* (214 N. Y. 468); Pomeroy's Equity Jurisprudence (2d ed. §§ 1211, 1419, note); *Markillie* v. *Allen* (120 Mich. 360); *Brannen* v. *Union Stock*

*Yards Bank of Buffalo* (215 N. Y. 652); *Tobin* v. *Kirk* (73 Hun, 229); *Mississippi & M. G. S. Canal Co.* v. *Noyes* (25 La. Ann. 62); *Newell* v. *Hadley* (206 Mass. 335); *Barron* v. *Whiteside* (89 Md. 448); *Coulter* v. *Minion* (139 Mich. 200); *Mayer* v. *McCracken* (245 Ill. 551); *Boice* v. *Conover* (69 N. J. Eq. 580); *Webber* v. *Hausler* (77 Minn. 48); *Young* v. *Pecos County* (46 Tex. Civ. App. 319); *Farmers' Loan & Trust Co.* v. *Detroit, B. C. & A. R. Co.* (71 Fed. Rep. 29); *Aller Co.* v. *Ries* (164 Mich. 501).

The recovery of a money judgment in the action is merely incidental to the subrogation.

When converted securities or their avails can be traced into an account or property owned by the wrongdoer the owner may follow them and recover the same or their value. (*Hatch* v. *Fourth National Bank, supra.*)

The right of subrogation or of equitable assignment is not founded upon contract nor upon the absence of contract, but is founded upon the facts and circumstances of a particular case and upon principles of natural justice, and generally where it is equitable that a person furnishing money to pay a debt should be substituted for the creditor or in place of a creditor such person will be so substituted. (*Crippen* v. *Chappel*, 35 Kansas, 495.)

In *Pease* v. *Egan* (131 N. Y. 262, 272) this court, speaking of subrogation, say: "No contract is necessary upon which to base the right, for it is founded upon principles of equity and benevolence and may be decreed where no contract exists  *  *  *.  It was said by Chief Justice Marshall that equity would clothe the party thus paying with the legal garb with which the contract he has discharged was invested, and it would substitute the party paying to every equitable interest and purpose, in the place of the creditor whose debt he has discharged."

According to the well-established principles upon which the doctrine of equitable assignment by subrogation rests if the person paying stands in such a relation to the

premises that his interest, whether legal or equitable, cannot otherwise be adequately protected the transaction will be treated in equity as an assignment. The remedy of subrogation is no longer limited to sureties and *quasi* sureties, but includes so wide a range of subjects that it has been called the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." Where within the limits suggested benefit may result to the person paying without injury to the person who should pay equity casts the burden upon the latter, who ought in fairness to bear it, provided it will not work injustice or disturb the rights of other creditors of a common debtor. (*Arnold* v. *Green*, 116 N. Y. 566.)

In *Dunlop* v. *James* (174 N. Y. 411, 415) the court say: "In modern times courts of law have dealt with subrogation as they would with assignments, and when the right of action to which the plaintiff asks to be subrogated is a legal right of action, a court of law may treat a plaintiff who is entitled in equity to subrogation as an assignee, and allow him to maintain an action of a legal nature upon the right to which he claims to be subrogated."

Speaking of subrogation it is said in *Stevens* v. *King* (84 Maine, 291): "It ignores the form and looks to the substance. It construes payment to be purchase and purchase to be payment, as justice may demand. It substitutes one person for another or property for property."

One who intrusts money to an agent to be invested in land and whose agent fraudulently used the money to pay-off a mortgage on lands may, on discovering the fraud, be subrogated to the rights of the mortgagee. (*Cotton* v. *Dacey*, 61 Fed. Rep. 481.)

The remedy of subrogation is governed by principles analogous to those that govern actions to recover money paid by mistake. Money paid on a negotiable instrument under a mistake of fact may be recovered back

however negligent the party paying may have been in making the mistake unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund. (*Hathaway* v. *County of Delaware*, 185 N. Y. 368; *Irving Bank* v. *Wetherald*, 36 N. Y. 335; *Mt. Morris Bank* v. *Twenty-third Ward Bank*, 172 N. Y. 244; *Continental Bank of N. Y.* v. *Tradesmen's Nat. Bank, of N. Y.*, 173 N. Y. 272; *Allen* v. *Fourth Nat. Bank of N. Y.*, 59 N. Y. 12; *U. S.* v. *Nat'l Ex. Bank*, 214 U. S. 302.)

From the findings of the Special Term in this case, unanimously affirmed by the Appellate Division, it not only appears that when the maker of the note paid the same with the plaintiff's money he was insolvent, but that the indorser's liability on the note had at that time become fixed by demand and notice. The indorser was, then as to the bank, a principal debtor. (*First Nat'l Bank of Buffalo* v. *Wood*, 71 N. Y. 405, 411; *German American Bank of Buffalo* v. *Niagara Cycle F. Co.*, 13 App. Div. 450; Negotiable Instruments Law, § 144.)

It is conceded that the plaintiff on October 24, 1911, was not in any way interested in the $2,500 note nor obligated to pay it. In making John K. Kerr its agent in connection with the contract for the sale of its coal it was not so far as appears negligent. It was an ordinary business transaction. Neither was there any fraud or connivance on the part of the plaintiff in the payment by John K. Kerr of the note from its money. It was wholly unauthorized. The equity in favor of the plaintiff is not affected because of its misplaced confidence in John K. Kerr.

Although the plaintiff was without fault in connection with the transaction, nevertheless its money was diverted and unlawfully used by the maker to get possession of the note. It does not appear from the findings that there has since been any intervening equity in favor of the appellants. The appellants' effort to obtain such a find-

ing was met with a refusal on the part of the court. No laches of the plaintiff interferes with its equitable right. Not only was there but three days' time intervening between the conversion of the plaintiff's money and William B. Kerr's death, and but seven days to John K. Kerr's bankruptcy, but even if John K. Kerr had not converted plaintiff's money to get possession of the note, and in that short interval payment could have been obtained by William B. Kerr from the maker of the note, his (the maker's) bankruptcy would have constituted such a payment an unlawful preference among his creditors which the bankruptcy court would have annulled and set aside. (*Matter of Bailey & Son*, 166 Fed. Rep. 982.)

If any circumstances exist that make it inequitable to decree subrogation the appellants should have shown it on the trial. (*Hathaway* v. *County of Delaware*, 185 N. Y. 368; *Mayer* v. *Mayor, etc., of N. Y.*, 63 N. Y. 455; *Ball* v. *Shepard*, 202 N. Y. 247, 254.) This they wholly failed to do.

It further appears from the findings that dividends have been paid from the assets of the bankrupt maker upon the amount diverted from the plaintiff and such dividends have been credited thereon. William B. Kerr, as we have seen, died October 27, 1911. His will was proven November 18, 1911. John K. Kerr became a bankrupt November 1st, 1911. This action was commenced January 17, 1912, although the appellants were not served until some weeks thereafter.

All of the facts and circumstances show that the appellants have not been injured by what has occurred. There is nothing that in any way interferes or affects the simple question whether, under the circumstances disclosed, the note should be considered alive and equitably assigned to the plaintiff, that the maker and the appellants may be held thereon for the benefit of the plaintiff.

If this action is not sustained the appellants will secure the discharge of their testator's obligation on the

note through a payment from the plaintiff's money by fraud on the part of the maker of the note and without payment on their part or any equity in any way affecting the question under consideration. If such an inequitable result is sustained the court must acknowledge its impotence to prevent wrong and enforce justice. (*Title Guarantee & Trust Co.* v. *Haven*, 214 N. Y. 468, 487.)

As the maker of the note wrongfully and unlawfully used plaintiff's money to obtain possession of it he is estopped from claiming that it was paid. Even if as to the bank the note was paid by one of two persons primarily liable thereon, neither of the persons so primarily liable to the bank are in a position in equity to claim that the note has been paid.

Plaintiff's recovery may also under all the circumstances disclosed be sustained upon the general theory that where negotiable securities are stolen or obtained through fraud the owner may follow and claim them or the proceeds thereof in the hands of the felonious taker or in any other hands to which they had been transferred unless intervening equities interfere. (*Newton* v. *Porter*, 69 N. Y. 133; *Newell* v. *Hadley*, *supra*.)

The appellants principally rely upon the decisions in *Lancey* v. *Clark* (64 N. Y. 209, 212) and *Eastman* v. *Plumar* (32 N. H. 238) to support their contention. In the *Lancey* case the plaintiff furnished the money to one of the members of a firm for whose benefit a note had been given, with which to take it up from the holder thereof. It was held that the plaintiff did not derive any right to the note by transfer from the holder but from the party primarily liable by payment at his request. The question under consideration in that case was one as to the intention of the parties when the amount of the note was paid to the holder thereof. On the facts before the court it was said in the opinion: "All the bank did in this case was to take payment of the note and deliver it up to a party paying and liable to pay, after protesting it, so that no

could make such use of it as the law and the facts would authorize. It did not transfer or intend to transfer it. The plaintiff, therefore, took no title to it from the bank, but he took it from Lincoln, and cannot, therefore, enforce it against the defendant." In the *Eastman* case a note had been made payable to order and indorsed in blank. The principal signer on the note being called on for payment brought the money and paid it over to the holder, who received it as and for payment and gave up the note to the principal. The money paid in fact belonged to a third person who sent the principal to purchase it as his agent. Held, in an action brought by the owner of the money against the surety on the note that the note as to the surety was paid and that the action could not be maintained.

The question of fraud, mistake or equity or the right to an equitable assignment or subrogation does not appear to have been discussed or claimed by counsel or considered by the court in either of these cases. The decisions therein particularly in view of the fact that the rule as to an equitable assignment or subrogation was not claimed or considered are not sufficient to prevent the application of the rule in equity relating to an assignment or subrogation for the purpose of doing justice as herein stated.

The judgment should be affirmed, with costs.

CRANE, J. (dissenting). On the 2d day of October, 1911, John K. Kerr made his promissory note for $2,500 to William B. Kerr, which was thereafter indorsed by the payee to enable the maker to obtain credit thereon. William B. Kerr was an accommodation indorser. The note was discounted for the maker and became due on October 23d, 1911, to the Third National Bank at its offices in Buffalo, N. Y. Not being paid, the note was protested and notice of dishonor mailed to the indorser on the day of payment. On October 24th, 1911, the note was paid by the maker, John K. Kerr, and deliv-

ered over to him by the bank on the following day — the 25th — and thereupon destroyed. At this time William B. Kerr was very sick and died on October 27th, 1911. His affairs were looked after by his wife and others. It was she who indorsed this note for him, signing the name of " William B. Kerr per Mrs. W. B. Kerr." About the time of payment John K. told Mrs. Kerr, the wife of William, that he had paid the note and had taken care of it. The trial justice also found as a fact that one Eliza M. Kerr who was looking after the personal business of William B. Kerr, which was quite extensive, learned on October 24th, 1911, of the payment of this promissory note, and relied on the payment and continued to rely upon the payment of the note, both as an individual, looking after his business and as the executrix of his will down to the time of her death March 6, 1912. Eliza M. Kerr was the executrix of William B. Kerr's will which was admitted to probate November 18, 1911. In fact, it was not until April 1, 1912, that the estate of William B. first learned of the claim made that the note had not been paid. The money with which John K. paid his note on October 24th, 1911, did not belong to him but to the plaintiff, the Pittsburgh-Westmoreland Coal Company; — he had wrongfully converted it to his own use.

In April of 1912 the plaintiff commenced this action to recover the amount of the note from the estate of the accommodation indorser upon the theory that, the note having been paid with its money, it could and should be subrogated to such rights as the bank had against the indorser at the time of protest for non-payment and notice thereof.

Thus far the plaintiff has succeeded but in my opinion upon a wrong theory.

When the note was paid on October 24th, the day after it became due, and the fact of payment was communicated to the indorser, his liability was discharged. His

obligations ended when his rights ceased. The courts below have proceeded upon the theory that the liability of the indorser upon receiving notice of protest was absolute, apparently overlooking the fact that such liability was conditioned upon the existence and continuance of his rights and remedies against the maker unimpaired. These rights have been thus stated: "It is a rule, long recognized, that an accommodation indorser, or surety, is entitled to have the engagement of the principal debtor preserved, without variation in its terms, and that his assent to any change therein is essential to the continuance of his obligation. The reason of the rule is that his right must not be affected, *upon the maturity of the indebtedness, to make payment and by subrogation to the creditor's place, to, at once, proceed against the principal debtor to enforce repayment.* Therefore, it is that any agreement of the creditor, which operates to extend the time of payment of the original debt and suspends *the right to immediate action,* is held to discharge the non-assenting indorser, or surety; as the law will presume injury to him thereby." (GRAY, J., in *National Park Bank of N. Y. v. Koehler,* 204 N. Y. 174, 179. See, also, *Shutts v. Fingar,* 100 N. Y. 539, p. 544.)

In *German American Bank of Buffalo* v. *Niagara Cycle F. Co.* (13 App. Div. 450) it was said to be the indorser's *duty* upon notice of dishonor to take up the note and to take such proceedings against the maker for its collection as should be deemed expedient. (*First National Bank of Buffalo* v. *Wood,* 71 N. Y. 405; *Smith* v. *Erwin,* 77 N. Y. 466; *Madison Square Bank* v. *Pierce,* 137 N. Y. 444; *Schwartzman* v. *Post,* 94 App. Div. 474.)

Did William B. Kerr have any such right left to him after the payment to the bank on October 24th? The bank had received the amount of the note with interest, had returned the note to the maker and had marked it paid upon its books. After that date the indorser could

not have taken up the note from the bank nor have proceeded against the maker. Leaving out of consideration the fact that the indorser had been informed that the note had been paid, his actual position — known to him or unknown — was this: the bank would not have received his money; it had no note to surrender; the debt had been paid, the records so marked, and the note destroyed.

The theory of the plaintiff that John K. was its agent and as such purchased the note from the bank in its behalf is a fiction; the fact is the note as to the bank was paid.

Neither the bank nor the indorser knew until months later that payment had been made by. the maker with another's money. In the meantime John K. Kerr, the maker, had gone into bankruptcy. The bank had never repaid the money and could not itself proceed against the indorser. By the judgment in this case the liability of the indorser has been reinstated five months after payment of the note. In that time no action could have been taken by him against the maker and his remedies became valueless.

Recovery by the plaintiff will establish this principle: When a maker pays his note at a bank after maturity and notice of protest, and it is considered by the bank and by the indorsers as paid, the liability of the indorsers may yet be revived any time within the period of limitations if it appear that the payment had in fact been made with stolen money. This in my opinion is reading into the Negotiable Instruments Law something which is not there and placing indorsers in a position where they can never be sure of discharge from liability. John K. Kerr was the principal debtor; he paid the note in due course and the indorser became discharged. (*Lancey* v. *Clark*, 64 N. Y. 209; *Eastman* v. *Plumar*, 32 N. H. 238, and *Carson* v. *Heath*, 86 Ga. 438.)

The doctrine of subrogation would apply to any rights

the bank might have against the maker of the note but does not apply in this case against the indorser.

The judgment should be reversed and the complaint dismissed.

Collin, Hogan, Cardozo and Pound, JJ., concur with Chase, J.; Cuddeback, J., dissents, and Crane, J., reads dissenting memorandum.

Judgment affirmed.