CITIZENS' TRUST COMPANY OF UTICA, Plaintiff, *v.* R. PRESCOTT & SON, INC., and Others, Defendants.*

Supreme Court, Oneida County, December 14, 1927.

Subrogation — rights acquired — action to recover upon trade acceptance drawn by defendant corporation, accepted by drawee, indorsed by corporation and two individuals in order named, and then discounted by plaintiff for benefit of corporation — defendant corporation claims right, on payment of judgment, to be subrogated to rights of plaintiff, to enforce payment of liability of individual indorsers — proof does not warrant conclusion that individual defendants are primarily liable (Neg. Inst. Law, § 118) — relation between defendants, as indorsers, is not such as would permit plaintiff to invoke rule of subrogation — defendant corporation cannot be subrogated to plaintiff's rights until entire debt has been paid.

In this action to recover upon a trade acceptance drawn by defendant corporation, accepted by the drawee thereof, indorsed by defendant corporation and two individuals in the order named, and then discounted by plaintiff for the benefit of defendant corporation, said corporation claims the right, on the payment of the judgment, to be subrogated to the rights of plaintiff to enforce the payment of the liability of the individual indorsers on the trade acceptance, and with reference to plaintiff's right to resort to any collateral held by it for that purpose.

Since the proof does not warrant the conclusion that the individual defendants, or either of them, are primarily liable and should in equity pay the plaintiff the amount of the trade acceptance rather than defendant corporation, the

-----

* Affd., 224 App. Div. ——.   See, also, 221 id. 420, 424, 426.

relation between the defendants, as indorsers on the instrument, is not such as would permit defendant corporation to invoke the rule of subrogation.

There is no evidence which overcomes the presumption that the indorsers are liable in the order of their indorsement.    (Neg. Inst. Law, § 118.)

Moreover, defendant corporation cannot be subrogated to plaintiff's rights, since subrogation does not take place until the entire debt, for which the surety is liable, has been paid.    There cannot be any *pro tanto* subrogation.

Until the defendant corporation pays the entire indebtedness which one of the individual indorsers owes the bank, it has no such equity as will entitle it to the active aid of a court of equity, and it cannot be substituted for the bank so that it may resort to any collateral held by the bank for that purpose.    Moreover, *it seems* that the court cannot make an order relating to the securities of said individual indorser, since he has not been made a party to this action, has not been served with the summons and complaint, and has not appeared in the action.

MOTION by plaintiff for direction of verdict in its favor on a special verdict of the jury, and countermotion by defendant first named to set aside the verdict and for the direction of a verdict on the defense that it is entitled to resort to collateral.

*Dunmore, Ferris & Dewey* [*Thayer Burgess* and *W. Chase Young* of counsel], for the plaintiff.

*Pierce & Holcombe* [*Thos. E. O'Brien, William F. Pritchard* and *M. William Bray* of counsel], for the defendant R. Prescott & Son, Inc.

EDGCOMB, J.    This action is brought to recover $15,000 and interest from November 15, 1925, upon a trade acceptance, dated on that date, drawn by the defendant R. Prescott & Son, Inc., and accepted by the Thermiodyne Radio Corporation, which corporation was at that time indebted to the drawer in the sum of $15,000 for the purchase of goods, wares and merchandise, and which said trade acceptance was indorsed by the defendants R. Prescott & Son, Inc., William Maynard Levy and John W. Guibord, in the order named, and which, on or about the 18th day of November, 1926, was discounted by the plaintiff for the benefit of the defendant R. Prescott & Son, Inc.

All the issues in the case, except the affirmative defense of an equitable counterclaim for subrogation, were disposed of upon the trial.    The only question to be decided here is whether the defendant has a legal right, upon payment of the judgment herein, to be subrogated to the rights of the plaintiff with reference to any collateral held by it as security for said trade acceptance, or applicable to that purpose.

No collateral was deposited with the bank as security for this particular trade acceptance when it was discounted, nor at any subsequent time.    The bank was apparently willing to rely upon

the personal responsibility of the parties whose names appeared upon the instrument.

Mr. Guibord was a heavy borrower from the plaintiff, and had deposited with the bank collateral as security for the payment of certain specified loans, and for all other indebtedness, present or future, which the plaintiff then had, or which it might thereafter have, against said Guibord, including any indorsements made by him. Guibord had paid certain notes held by the bank, and the collateral thereto had not been returned to him. This left some loose collateral in the possession of the bank, which it had the right to apply to such indebtedness of Guibord as it desired.

Defendant insists that the judgment should contain a provision that, upon payment in full by it of the judgment obtained by the plaintiff herein, it shall be entitled to stand in the same position in which the plaintiff was at the commencement of this action with reference to plaintiff's right to enforce the payment of the liability of Guibord and Levy as indorsers on the trade acceptance in suit, and with reference to plaintiff's right to resort to any collateral held by it for that purpose.

Subrogation is the substitution of a person in the place of a creditor, so that the one in whose favor it is exercised succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities. It does not depend on privity of contract, express or implied, but is founded on the facts and circumstances of each particular case, and on the principles of natural justice. (*Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137.)

In general, the doctrine of subrogation will be applied where a person, other than a mere volunteer, pays a debt or demand to protect his own rights or save his own property, which in equity or good conscience should have been paid by another. (*Platt* v. *Brick,* 35 Hun, 121; *Cole* v. *Malcolm,* 66 N. Y. 363; *Acer* v. *Hotchkiss,* 97 id. 395; *Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 id. 137.) The right is not limited to the relation of principal and surety in the sense in which those terms are usually applied. (*Arnold* v. *Green,* 116 N. Y. 566.)

Subrogation, however, will not be allowed where it works an injustice to any one, because it is a creature of equity. Its object is to prevent an injustice; not to interfere with the rights of those having equal or superior equities. It will be ordered only in a clear case of pure equity.

The first question to be decided here is whether the facts and circumstances surrounding the discount of this trade acceptance are such as to indicate that Levy and Guibord, or either of them, were primarily liable to the bank on this trade acceptance, and that

R. Prescott & Son, Inc., was compelled to pay a debt upon which it was only secondarily liable. In other words, do the facts and circumstances here warrant the conclusion that Levy and Guibord, or either of them, should, in equity and good conscience, have paid the bank the amount of this trade acceptance, rather than R. Prescott & Son, Inc.? Unless this question should be answered in the affirmative, the doctrine of subrogation cannot be invoked by the defendant.

It must be remembered that R. Prescott & Son, Inc., is the first, and that Levy and Guibord are the second and third, indorsers upon this trade acceptance. So far as the indorsers themselves are concerned, they are *prima facie* liable in the order in which they indorsed the instrument. Evidence is admissible, however, to show that, as between themselves, they have agreed otherwise. (Neg. Inst. Law, § 118; *Witherow* v. *Slayback*, 158 N. Y. 649; *Union Bank of Brooklyn* v. *Sullivan*, 214 id. 332; *Wittemann* v. *Sands*, 238 id. 434.)

So that, unless there is some evidence here which overcomes the presumption created by the statute, the primary liability upon this instrument rests upon R. Prescott & Son, Inc., rather than on the other two indorsers. Defendant insists that the circumstances under which Levy and Guibord indorsed the trade acceptance in suit are such as to rebut the above presumption, and that the evidence warrants a finding that Levy and Guibord were in reality the principal debtors, and that R. Prescott & Son, Inc., was nothing more than a guarantor for the payment of the trade acceptance to the bank. I do not think that this contention can be upheld. Concededly, the Thermiodyne Radio Corporation was primarily liable upon this instrument. It was indebted to R. Prescott & Son, Inc., and the trade acceptance was given for such indebtedness. The instrument had been drawn and accepted by the radio corporation, and delivered to R. Prescott & Son, Inc., before Levy and Guibord indorsed it. R. Prescott & Son, Inc., wanted the money. Mr. Ferris, president of the Thermiodyne Radio Corporation, suggested that, if the defendant wished, he could get the instrument discounted by the plaintiff. It was then that the president of the defendant questioned the financial responsibility of the acceptor of the instrument. He stated that when he had signed the trade acceptance in question, and two others which had been drawn at the same time, he considered the radio corporation financially responsible, and that he, to quote his own language, " did not want those trade acceptances discounted unless we were in some way protected." When asked what protection he wanted, the president of the defendant replied that it would be satisfactory if Levy and Guibord would personally indorse them. In compliance with such suggestion, the persons named did indorse the instrument in suit. This is all the evidence

which pertains to the liability of Levy and Guibord upon this instrument. It seems to me that this falls far short of making them primarily liable upon this trade acceptance. They received no consideration for their indorsements. Of course, they were liable to the bank. But where is there any liability on their part to R. Prescott & Son, Inc.? They got no proceeds of this bill of exchange. The money went to R. Prescott & Son, Inc., with the exception of a small amount which is not material here. R. Prescott & Son, Inc., benefited by this discount. Levy and Guibord did not. I do not think that there is any evidence here which overcomes the presumption that these indorsers are liable in the order of their indorsement. I am, therefore, compelled to hold that the relation between the indorsers upon this instrument is not such as would permit the defendant to invoke the rule of subrogation.

Another insurmountable obstacle stands in the way of the defendant, upon paying this judgment, stepping in the shoes of the plaintiff so far as Guibord's collateral is concerned.

The rule is well settled that, before subrogation can be enforced, the entire debt must be paid. It must be remembered that in this particular instance no collateral whatever was deposited to secure the payment of this particular trade acceptance. The defendant insists that, notwithstanding the fact that Guibord is heavily indebted to the bank on both direct and indirect liability, and that the collateral which he has put up with the bank is held as security for specific indebtedness, or his indebtedness in general, the defendant should still be substituted in the place of the bank as to all loose collateral, and the equity in certain other collateral, upon payment of the amount of this judgment only. In other words, the defendant urges that the rule relative to the payment of the debt before subrogation can take place applies only to the specific debt in which this defendant is interested, and that, when it pays that debt in full, it is entitled to be put in the bank's shoes so far as this collateral is concerned.

I do not think that there can be any *pro tanto* subrogation. This is not a case where there is any error or mistake in calculation as to the amount due, and where by reason thereof not enough is paid to meet the whole debt, when it was the intention to pay all that was due, so that it might be claimed that equity, under its broad powers to relieve from mistake, might grant a subrogation *pro tanto*. Subrogation does not take place until the payment of the entire debt for which the surety is liable. (*Sickels* v. *Herold*, 15 Misc. 116; affd., with slight modification, 149 N. Y. 332; *Columbia Finance & Trust Co.* v. *Kentucky Union R. Co.*, [C. C. A.] 60 Fed. 794; *Wilcox* v. *Fairhaven Bank*, 7 Allen, 270; *Vert* v. *Voss*, 74 Ind. 565.)

In *Sickels* v. *Herold* (*supra*) an action was brought to recover upon a note of $5,000, given by the defendant to the Harlem River Bank. The note in suit was one of several, aggregating $50,000, all of which had been given by the directors of said bank to make good the impairment of the bank's capital, which the bank examiner had found to be decreased in that amount by reason of the worthless character of certain securities held by the bank of the face value of $65,000. The court held that, even if the defendant and the makers of the other notes were to be treated as sureties entitled to subrogation with respect to the $65,000 of questionable assets which their notes were intended to secure, the receiver of the bank had the right to hold such assets until the whole indebtedness of the sureties had been paid, and that no subrogation could be ordered until the whole of the $50,000, represented by all the notes of all the sureties, had been paid. The holding of the court below was approved by the Court of Appeals, the latter court stating that it was quite content with the disposition of the case made below for the reasons stated by DALY, Ch. J., in his opinion, except as to a question of interest. (149 N. Y. 335.)

In *Wilcox* v. *Fairhaven Bank* (*supra*) one Fish conveyed to the defendant bank certain personal property to be held by it as security for the payment of several promissory notes and drafts for which he was then, or for which he might become liable, either as promisor, acceptor, drawer or indorser, within the following two years. The bank claimed the right to appropriate the whole of the proceeds of the collateral in payment of sundry notes made by Fish and discounted by it between certain dates, and by applying the balance toward the payment of sundry other notes of Fish, a part of which were indorsed by Holmes & Co. and Turner, both of whom, as well as Fish, were insolvent. The plaintiff insisted that the conveyance of the property as collateral created a trust in favor of all the sureties and indorsers upon the several notes of Fish, discounted and owned by the bank, and that these sureties, including the plaintiff, were entitled to subrogation *pro rata*. It was held that a creditor, who holds security without special stipulations for its application upon various notes due from a debtor, some of which bear the names of sureties, may, in case of the insolvency of the principal debtor and of some of the sureties, apply the security toward the payment of such of the notes as may be necessary for his own protection, and that the solvent sureties upon other of the notes cannot avail themselves of the collateral in equity, without paying or offering to pay the whole of the notes for which the security was given.

In *Vert* v. *Voss* a judgment was obtained upon one of five promis-

sory notes, all of which were covered and secured by the same collateral, and three of which were not yet due at the time of the rendition of said judgment. It was held that payment of the judgment upon one of these notes by the appellant would not entitle him to be subrogated to the rights of the creditor in the security.

Until the defendant pays the entire indebtedness of Guibord to the bank, it has no such equity as will entitle it to the active aid of a court of equity, and cannot be substituted for the bank as regards Guibord's collateral.

Another objection to granting defendant the relief which it seeks has been raised, which, in view of the decision already made, need not be decided here. Mr. Guibord, the owner of the security which was deposited with the plaintiff, and which the defendant seeks to have turned over to it, is not a party to this action. He has never been served with the summons and complaint, nor has he appeared in this action. I am very doubtful as to the right of the court to reach out and make an order relating to his securities, and turn them over to some stranger without giving him a chance to be heard, and without affording him his day in court. Before that can be done, it seems to me that he should be joined as a party here. (*Gerseta Corp.* v. *Gramatan Nat. Bank*, 205 App. Div. 868.)

Especially is that so where defendant raises the issue that Guibord's liability on the trade acceptance is other than appears on the face of the instrument, and where such issue must be determined in favor of the defendant in order to entitle it, in any event, to take over Guibord's securities. It would seem as if Guibord ought to be given a chance to controvert such claim, before his property is handed over to some third party.

Were it not for the decision of the Appellate Division upon an appeal from an order granted in this case (221 App. Div. 420), I should be inclined to hold that no judgment of subrogation could be granted until Guibord had been brought in and made a party here. However, the fact that Guibord had not been served in this action was brought to the attention of the Appellate Division, and still that court held that the equitable defense of subrogation on its face was good. In view of that ruling, I do not feel that I would be justified in following my own opinion, and denying defendant the relief which it asks because of the fact that Guibord is not in court. However, as before stated, a decision of this question is not important here.

I have studied with very great care the decision of the Appellate Division in this case upon the appeal from the various orders heretofore granted, and which opinions are reported in 221 Appellate Division, 420 to 434. I do not feel that these decisions are controlling

here, or that my decision runs counter to that of the Appellate Division. As I read these opinions, that court simply held that, taking the answer at its face value, the affirmative defenses constituted a defense to the action. The court refused to express an opinion as to the controlling effect on the trial of the motion to strike out the separate defenses as insufficient. The Appellate Division certainly did not pass upon the sufficiency of an equitable defense for subrogation where the facts are such as has been established by the evidence here. The allegations in the complaint relative to this defense are very meager. There is no allegation from which it could even be inferred that R. Prescott & Son, Inc., was primarily liable upon this instrument, and that Levy's and Guibord's liability was a secondary one. Neither is there any allegation from which it could be said that the collateral which the defendant seeks to impound was not deposited as direct security for the payment of the trade acceptance in suit, or that Guibord owed the bank any other sums for which this collateral had been deposited. The facts as shown on the trial are far different from those set forth in the answer. The Appellate Division had before it the pleadings and nothing more, and it based its decision solely upon what was alleged there. The evidence changes the aspect of the case.

For the reasons above stated, the equitable defense of subrogation is dismissed.